In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-346 CV


____________________



JAMES DREW PHILLIPS, Appellant



V.



NANCY JANE PHILLIPS, Appellee






On Appeal from the 1-A District Court


Jasper County, Texas


Trial Cause No. 22176






OPINION


 James Drew Phillips appeals the final decree of divorce rendered by the trial court. 
Before us, James contends that the trial court abused its discretion in its division of the
community estate of the parties, and that there was legally and factually insufficient
evidence to support the trial court's division of the community estate. The record indicates
that in her first amended petition for divorce, Nancy alleged insupportability as the only
ground for divorce. See Tex. Fam. Code Ann. § 6.001 (Vernon 1998). Immediately
after alleging insupportability, the following sentence appears: "The conduct of the
Respondent has amounted to fault causing the break-up of the marriage, and therefore
Petitioner is entitled to a disproportionate part of the community property." We are faced
with what appears to be an issue of first impression: May "fault causing the break-up of
the marriage" be considered by the trial court in its "just and right" division of the estate
of the parties, when the petitioner sought divorce only on grounds of insupportability? 
 Trial was to the court without a jury. Following rendition of the decree of divorce,
James filed a request for findings of fact and conclusions of law. Among the written
findings of fact by the trial court, the following appears as finding number six: "The fault
of Respondent James Drew Phillips caused the breakup of the marriage." James
characterizes the testimony regarding his "fault" for the breakup of the marriage as
"insignificant" so as to render the trial court's disproportionate award of the community
estate to Nancy an abuse of discretion. 

 In a divorce proceeding, a trial court "shall order a division of the estate of the
parties in a manner that the court deems just and right, having due regard for the rights of
each party. . . ." Tex. Fam. Code Ann. § 7.001 (Vernon 1998). It is error for a trial
court to sever the issue of divorce from the issue of property division, and until the
property of the parties has been disposed of, no final divorce judgment exists. See
Dawson-Austin v. Austin, 968 S.W.2d 319, 324 (Tex. 1998); Vautrain v. Vautrain, 646
S.W.2d 309, 316 (Tex. App.--Fort Worth 1983, writ dism'd). A trial court has broad
discretion in making the division. Schlueter v. Schlueter, 975 S.W.2d 584, 589 (Tex.
1998); Murff v. Murff, 615 S.W.2d 696, 698-99 (Tex. 1981). A division of the community
estate need not be equal, and the trial court may weigh many factors in reaching its
decision. Id. Among these many factors is the "fault" of either of the parties for the
breakup of the marriage, if pleaded. Twyman v. Twyman, 855 S.W.2d 619, 625 (Tex.
1993). However, even where "fault" is properly pleaded and proved, an unequal division
of the community estate may not be awarded to punish the party at "fault." See Young v.
Young, 609 S.W.2d 758, 762 (Tex. 1980); In re Marriage of DeVine, 869 S.W.2d 415,
428 (Tex. App.--Amarillo 1993, writ denied); Smith v. Smith, 836 S.W.2d 688, 693 (Tex.
App.--Houston [1st Dist.] 1992, no writ). As the reviewing court, we must presume that
the trial court properly exercised its discretion, and we may not disturb the trial court's
property division unless it clearly abused its discretion. Stafford v. Stafford, 726 S.W.2d
14, 16 (Tex. 1987); Bell v. Bell, 513 S.W.2d 20, 22 (Tex. 1974). A court abuses its
discretion when it acts without reference to any guiding rules or principles, in other words,
when the act is arbitrary or unreasonable. Worford v. Stamper, 801 S.W.2d 108, 109
(Tex. 1990). Under an abuse of discretion standard, legal and factual insufficiency are not
independent, reversible grounds of error but are relevant factors in assessing whether the
trial court abused its discretion. See Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223,
226 (Tex. 1991). 

 In the instant case, it is undisputed that the trial court awarded a disproportionate
amount of the community estate to Nancy. Nancy contends the trial court properly
awarded her approximately 60% of the community estate with the remaining 40% of the
community estate going to James. In his brief, James contends that the division was even
more lopsided in favor of Nancy and points out that he was awarded a mere 23.5% while
Nancy was actually awarded 76.5%. Because the trial court entered a finding that James
was at "fault" for the breakup of the marriage and awarded Nancy a disproportionate share
of the community estate, we must initially examine whether the trial court abused its
discretion in finding this fact before we move on to decide whether the trial court's
ultimate property division was an abuse of discretion in violation of section 7.001 of the
Family Code. 

 Nancy cites Murff in support of her contention that fault in the breakup of the
marriage could be considered by the trial court in arriving at a "just and right" division
of the community estate. We noted as much above. However, we believe the facts of
Murff along with its specific holding are distinguishable from those of the instant case. In
Murff, the petitioner, Mrs. Murff, sought the divorce on three grounds: "no fault"
insupportability, and alternatively, adultery and cruel treatment, both "fault" grounds." 
Murff, 615 S.W.2d at 697. Although the divorce decree itself did not specify upon what
ground or grounds the trial court was granting Mrs. Murff the divorce, findings of fact
were filed which indicated that she had proved grounds for the divorce "under all three
alternative grounds." Id. On direct appeal, the court of civil appeals found abuse of
discretion by the trial court in six areas, one of which was for considering "fault" of Mr.
Murff to justify the disparity in division of the community estate. Id. In reversing the
court of civil appeals, the Supreme Court held the following:

 Mrs. Murff's first point of error is that the court of civil appeals erred in
holding that the trial court could not consider fault in the breakup of the
marriage in arriving at a "just and right" division of the community estate. 
We sustain this point, having recently ruled on the same question in Young
v. Young, 609 S.W.2d 758 (Tex. 1980). We there held that in a divorce
granted on a fault basis, the trial court may consider the fault of one spouse
in breaking up the marriage when making a property division. In the instant
case, the divorce was based upon both no-fault and fault grounds, thus Young
is applicable. As we said in Young, however, "this does not mean that fault
must be considered, only that it may be considered." 


Id. at 698 (emphasis in original). 

 An examination of Young, upon which the Murff Court relied, is also enlightening. 
Chief Justice Greenhill, writing for the Court, framed the pertinent issue as follows: "The
second question is whether, in a divorce granted on a fault basis, the trial court may
consider the fault of one spouse in breaking up the marriage when making a property
division." Young, 609 S.W.2d at 759 (emphasis added). In Young, the trial court found
that Mr. Young deserted Mrs. Young, leaving her with full care and responsibility of their
physically disabled son, and entered a conclusion of law that Mr. Young "was guilty of
cruel treatment toward [Mrs. Young]." Id. A further conclusion of law stated: "James
L. Young's conduct [and] the disparity in the earning power of JAMES L. YOUNG and
LAURA L. YOUNG are such that an unequal division of the property is just and right." 
Id. at 761. We set out the following portions from Young in which the Court discusses
why "fault" was a proper consideration by the trial court in making its division of the
parties' property:

 This divorce petition was based on all three traditional fault grounds and
was granted to Laura on these grounds. The trial court entered a conclusion
of law that James had been guilty of cruel treatment toward Laura. It also
entered findings of fact, separate from the divorce decree and in the decree
itself, related to James' adultery (including an affair and a putative
marriage). The divorce decree itself states: "(t)he Court finds that
Respondent deserted Petitioner, leaving her with full care and responsibility
of the parties' adult child . . . ."


 . . . .


 The second reason given by the court of civil appeals in concluding that
fault should not be considered is that fault does not ever lie totally with one
spouse, and that consideration of fault would "require a trial judge to assess
each and every bicker, nag and pout, as well as greater faults, of each
spouse." 594 S.W.2d at 545. Again, we do not agree. We are not here
concerned just with bickers, nags and pouts. Here, we have unchallenged
findings of cruelty, adultery, and desertion. Both the Legislature and the
courts have traditionally considered these to be "fault." In this situation, we
agree with the trial court that fault may be a consideration to be weighed in
the division of property. This does not mean that fault must be considered
in all cases where a divorce is granted on fault grounds. Our holding is that
it may be considered. 


Id. at 761, 762. 

 In both Murff and Young, the trial court was presented with petitions alleging
statutory grounds for divorce, with the petition in Murff containing the additional "no
fault" ground of insupportability. In the instant case, Nancy alleged only insupportability
as the ground for divorce. Her rather conclusory allegation of "fault" for the breakup of
the marriage was tied to her request for a disproportionate award of the community estate. 
An examination of the testimony in the record before us with regard to the "fault"
allegation indicates that Nancy had suspicions as to James' marital infidelity but no direct
evidence, and rather weak circumstantial evidence, supporting such suspicions. (1) 
Furthermore, the decree of divorce is completely silent as to any reason for the dissolution
of the marriage, simply decreeing that the parties "are divorced, and the marriage between
them is dissolved." The findings of fact and conclusions of law are equally silent as to the 
grounds on which the trial court found the marriage should be dissolved, with no mention
of the alleged ground of insupportability. (2) As noted above, the trial court did find that the
"fault" of James "caused the breakup of the marriage." It is clear to us that the
substantive facts and holdings in both Murff and Young do not contemplate a case in which
one or more statutory "fault" grounds for divorce are not at least pleaded and proved, yet
the trial court nonetheless is permitted to consider "fault" in dividing the community
estate. (3) This, in essence, is appellee's position with regard to her "fault" argument. As
we appreciate the background of the promulgation of the Texas Family Code, such a
position presents us with what appears to be a lack of consistency for both parties and
practitioners of family law. 

 We find support for this observation in two cases which give us both historical and
legal perspective as to marital dissolution law in Texas. We first examine Cusack v.
Cusack, 491 S.W.2d 714 (Tex. Civ. App.--Corpus Christi 1973, writ dism'd). Cusack
contains the following discussion of divorce law in Texas and the historical underpinnings
of the Texas Family Code and the "no fault" ground:

 Until 1913, the only grounds for divorce in Texas were cruelty, adultery,
abandonment and conviction of felony. All were fault grounds. In that year
(1913), living apart without cohabitation for ten years, a non-fault ground,
was added. In 1941, insanity, another non-fault ground, became a ground
for divorce. Subsequently, the period of living apart without cohabitation
was reduced from ten to seven years (1953), and from seven to three years
(1967). The ground of insanity was eliminated and mental illness was
substituted therefor in 1965. 


 Until 1969, except for the above noted legislative enactments, Texas
legislation on grounds for divorce remained virtually unchanged for over a
hundred years. The adversary nature of divorce litigation remained, and
ancient ecclesiastical grounds for separation based upon fault formed the
core of substantive divorce law. If the conduct complained about did not fit
into one of these statutory grounds, a divorce was denied. Adultery was an
absolute bar to a divorce where the action was brought on one of the fault
grounds. Other defenses to divorce actions were condonation, connivance,
collusion and recrimination. As a result, some parties whose marriage had
become insupportable could not obtain a divorce. It became apparent in the
late 1960's that the existing grounds for divorce and the defenses thereto
were no longer compatible with modern beliefs. 8 Houston Law Review,
"Marriage and Divorce Under the Texas Family Code," pp. 100-136 (1970).


 In keeping with the idea of a realistic marital code that would meet the
needs of the twentieth century society, the Legislature, in 1969, enacted the
Family Code, which became effective on January 1, 1970. A non-fault
ground was added to the existing grounds for divorce. This new ground is
found in § [3.01] of the Code, V.T.C.A., which reads, as follows:

 

 "On the petition of either party to a marriage, a divorce may
be decreed without regard to fault if the marriage has become
insupportable because of discord or conflict of personalities
that destroys the legitimate ends of the marriage relationship
and prevents any reasonable expectation of reconciliation."


 The defense of recrimination was abolished by the Code and the defense
of condonation was materially altered thereby. § 3.08, Family Code. 
Article 4630, Vernon's Ann. Civ. St., theretofore existing, was expressly
repealed by the Code. The language in the repealed statute making adultery
a bar against a suit for divorce does not appear in the Family Code. 


Id. at 716-17. More to the point of our discussion was the Cusack Court's substantive
analysis of the consequences of the legislature's enactment of the "no fault"
insupportability ground in the context of the remaining traditional "fault" grounds of
cruelty, adultery, abandonment, and felony conviction. We again reproduce the Court's
excellent analysis of the effect of "no fault" insupportability in rocking the foundation of
over one hundred years of divorce law in Texas:

 We construe § 3.01 of the Code to be a ground for a divorce which is
separate and independent from any other grounds provided by the Code. 
That section of the Code is clear, plain and unambiguous. Since divorces are
granted only on statutory grounds, and as the Legislature was fully aware of
the grounds for divorce that existed in 1969, when the Family Code was
passed, it must be presumed that the Legislature was not satisfied with the
existing traditional grounds therefor. We conclude that it was the intent of
the Legislature to make a decree of divorce mandatory when a party to the
marriage alleges insupportability and the conditions of the statute are met,
regardless of who is at fault, on the theory that society will be better served
by terminating marriages which have ceased to exist in fact. The courts have
no right or prerogative to add to or take from such a legislative enactment,
or to construe it in such a way as to make it meaningless. As we view the
Code, when insupportability is relied on as a ground for divorce by the
complaining spouse, if that ground is established by the evidence, a divorce
must be granted the complaining party, without regard as to whether either,
both or neither of the parties are responsible for or caused the
insupportability. Stecklein v. Stecklein, 466 S.W.2d 421 (Tex.Civ.App.--San Antonio 1971, n.w.h.). It is not incumbent upon the plaintiff who
brings the divorce action upon the ground of insupportability to show any
misconduct on the part of the defendant, but it is only incumbent upon that
spouse to establish by the evidence that a state of insupportability exists
regardless of whether it is anyone's or no one's fault. Otherwise, the
grounds for divorce would remain the same as they were prior to the passage
of the Code, and the new ground would be of negligible force. It also occurs
to us that § 3.01 of the Code was incorporated therein as a new, independent
and additional ground of divorce to render unnecessary the revealing to
public gaze of sordid events that have come to mar two otherwise happy
lives. 


Id. at 717 (emphasis added). 

 Seized with the "Zeitgeist" regarding application of this "new, independent and
additional ground of divorce," the Dallas Court handed down the case of Baxla v. Baxla,
522 S.W.2d 736 (Tex. Civ. App.--Dallas 1975, no writ), disapproved on other grounds
by, Eggemeyer v. Eggemeyer, 554 S.W.2d 137, 142 (Tex. 1977). In Baxla, Mrs. Baxla's
petition for divorce alleged the statutory language of insupportability. Id. at 737. She was
granted the divorce by the trial court and Mr. Baxla appealed, contending insufficient
evidence to support the insupportability allegation. Id. The Baxla Court initially pointed
out that subsequent to the enactment of the Family Code in 1969, the legislature amended
the Code to remove the following provision, formerly § 3.64: "The court shall base its
decree for divorce or annulment on full and satisfactory evidence." Baxla, 522 S.W.2d
at 737. Although Mr. Baxla recognized the apparent legislative intent to lessen the
evidentiary burden in divorce proceedings, he continued to press the lack of sufficient
testimony by Mrs. Baxla to prove insupportability. Id. In deciding the issue adversely to
Mr. Baxla, the Dallas Court of Civil Appeals, much like the Corpus Christi Court of Civil
Appeals in Cusack, began with a bit of background on how the "no fault" insupportability
ground for divorce came to exist in Texas jurisprudence:

 As a result of extensive reform movements in the 1960's, the Uniform
Marriage and Divorce Act was drafted and various versions of this uniform
act dealing with marriage breakdown as a ground for divorce have been
adopted by thirty-two states. In 1971, [sic] Texas, while not adopting the
Uniform Code entirely, enacted a portion thereof dealing with "no fault"
divorce. Since the language used in the various statutes is new to divorce
law there has not yet been time for much judicial interpretation of this
language. It is, however, clear that the statutes have as their goal the
abolition of fault as a requirement for granting of divorces. It is also
manifestly clear from the legislative history of many, if not all, of the
statutes, that the purpose and intent of the legislatures of the various states,
including Texas, is to abolish the necessity of presenting sordid and ugly
details of conduct on the part of either spouse to the marriage in order to
obtain a decree of divorce. For example, in California, evidence of
misconduct or fault will not be permitted in the proceedings except when
relevant to child custody determination. Cal.Civ.Code § 4509 (West Supp.
1969). Thus, it has been said that in seeking to create a legal system which
meets the realities of marital failure, legislators believed that removing
considerations of fault and eliminating the incentive to present fault evidence
would materially reduce the bitterness and acrimony which had attended
divorce proceedings.


 We agree with the writer of the U.C.L.A. Law Review article referred to
in the margin, wherein it is stated:


 (T)he prima facie case for dissolution should be satisfied by
the declaration of petitioner that he or she sincerely believes
that the marriage has irreparably [b]roken down. Courtroom
questions are expected to be brief and would go directly to
petitioner's state of mind. . . . 


 Upon such testimony, dissolution should ordinarily be granted,
unless the judge detects hesitancy on the part of the petitioner
about the possibility of saving the marriage. In that case the
judge may refer the spouses to conciliation counseling. 


Baxla, 522 S.W.2d at 738 (emphasis added) (footnotes omitted). 

 The legislative intent of adding the insupportability ground to Texas marriage
dissolution law, as recognized in Cusack and Baxla, continues to find support in more
recent case law. See In re Marriage of Richards, 991 S.W.2d 32, 37 (Tex. App.--Amarillo 1999, pet. dism'd). We, too, find that it was the intent of the legislature to make
a decree of divorce mandatory when a party to the marriage alleges insupportability and
establishes the statutory elements, regardless of who is at fault. See id. at 37-38; Baxla,
522 S.W.2d at 738-39; Cusack, 491 S.W.2d at 717. By reasonable and logical extension,
the above finding permits us to hold that when dissolution of marriage is sought solely on
the ground of insupportability, evidence of "fault" becomes irrelevant as an analytical
construct and may not be considered by the trial court in its "just and right" division of the
community estate. (4)

 As we noted above, a trial court has broad discretion in dividing the community
estate in a divorce action. Schlueter, 975 S.W.2d at 589; Murff, 615 S.W.2d at 698. The
trial court exercises this discretion by considering many factors. Id. at 699. Excluding
the "fault" factor, the nonexclusive list includes the following: (1) the spouses' capacities
and abilities, (2) business opportunities, (3) education, (4) relative physical conditions, (5)
relative financial conditions and obligations, (6) disparity of ages, (7) sizes of separate
estates, (8) the nature of the property, and (9) disparity in earning capacities or of incomes. 
Id. The trial court may also consider whether one of the parties to the marriage has wasted
community assets. See Schlueter, 975 S.W.2d at 589; Beard v. Beard, 49 S.W.3d 40, 66
(Tex. App.--Waco 2001, pet. denied). The fact that there are ten "non-fault" factors, as
well as the fact that the list is nonexclusive, should continue to give a trial court very broad
discretion in making its "just and right" division notwithstanding our holding that where
insupportability is the sole ground pleaded, a trial court may not factor in "fault" in its
"just and right" division of the community estate in order to award a disproportionate
quantity of the community estate to one spouse. 

 Nevertheless, even if, as in the instant case, the petitioner has failed to both plead
and prove a traditional "fault" ground for dissolution of the marriage resulting in the trial
court's erroneously attributing "fault in the breakup of the marriage" to the respondent,
said respondent must still demonstrate that the trial court abused its discretion in making
its ultimate "just and right" division of the community estate. See Tate v. Tate, 55 S.W.3d
1, 6 n.3 (Tex. App.--El Paso 2000, no pet.); Lindsey v. Lindsey, 965 S.W.2d 589, 592 n.3
(Tex. App.--El Paso 1998, no pet.). This is so because the trial court is still permitted to
consider any other "non-fault" factor(s) in awarding a disproportionate amount of the
community estate to one spouse.

 In the instant case, James first complains of the trial court's apparent valuation of
his retirement and Social Security on an equal footing with Nancy's retirement. During
cross-examination by James' attorney, Nancy was asked if she thought the total amount of
James' retirement and social security, approximately $45,608.64, was "an even wash" in
comparison to her retirement total of approximately $70,000 at the time of trial. Nancy
answered that she did consider it an "even wash" because, while both she and James
worked the same number of years and both paid into retirement, she was required to pay
the maximum amount into her teacher's retirement plan while James, being self-employed,
chose not to pay into a retirement plan and always tried to minimize the amount he paid
into Social Security. When cross-examined by Nancy's attorney, James admitted that tax
returns during the years he was self-employed indicated that Nancy's income "was much
greater" than James' year after year. James also admitted that during the time he was self-employed he did not attempt to put money aside for retirement but only contributed to
Social Security based upon his earnings. On re-direct examination, James stated that he
did not want the trial court to award him any of Nancy's retirement. James was willing
to split his Social Security benefits with Nancy at the time he retired. 

 James further requested the trial court to award him the 134 acre parcel of land that
had been purchased by James and Nancy from Nancy's parents for $90,000. The record
indicated that the 134 acre tract was landlocked, as was another 7.5 acre tract which had
been given to James and Nancy by Nancy's parents and upon which a house was built.
When questioned about this, James acknowledged the dilemma facing him if he were
awarded the 134 acre tract; he noted that he would have to get an easement from either
Nancy's father or a Mr. Parker in order to access the 134 acre tract. 

 James also complains of the valuation by the trial court with regard to several
"smaller" items (James' clothing, James' hearing aid, James' guns and gun equipment),
as well as the valuation of the Woodville house. James also contends that the easement
problem with regard to the Woodville house property [the 7.5 acre tract] and, by
implication the 134 acre tract, was Nancy's fault as "said necessity [for an easement] being
created by Appellee during the pendency of the divorce when Appellee had her children
deed the property to Appellee's parents." This contention is not supported by the record
evidence. While there was testimony that Nancy's parents deeded a 185 acre tract to both
Nancy and James, later, during the pendency of the divorce, James agreed with Nancy to
deed the 185 acre tract to their daughters. After this was done, the daughters deeded the
185 acre tract back to Nancy's parents. There is no evidence, however, that Nancy caused
the daughters to deed the 185 acre tract back to their grandparents. Moreover, James
acknowledged that in each instance when Nancy's parents deeded land to him and Nancy,
Nancy's parents retained some rights to the property such as first right of refusal or right
to any income or proceeds made off the property. 

 As can be seen, the valuation of the community estate was hotly contested by the
parties. Both parties introduced a list consisting of various personal items and real
property with each party's valuation included. Written appraisals were introduced on both
the Tyler County house and the Jasper County house. As we appreciate the source of
James' general complaint regarding the disproportionate award to Nancy, three areas
emerge. The first is the fact that Nancy was awarded the 134 acre tract with an agreed
value of $90,000. The second is the difference in the value urged by each party of the
Tyler County house - - Nancy's value being $84,420, and James' value being $111,000. 
James' complaint is not that the Tyler County house was awarded to Nancy, but that the
valuation accepted by the trial court was too low. The third source of James' appellate
complaint is with the trial court's apparent acceptance of Nancy's request to treat as an
"even wash" any distinction between the value of Nancy's retirement and the value of
James' retirement and Social Security.

 With regard to the discrepancy in values of the Tyler County house, we find no
abuse of discretion in using Nancy's valuation even though it is based upon an appraisal
done about eight months prior to trial. The actual appraisal value was $88,000; however
the appraiser noted three problems with the property: (1) the slab was cracked, (2) the
property was landlocked, and (3) water spots were visible on the ceiling from a repaired
roof leak. Nancy's testimony further explained that in addition to the three problems listed
by the appraiser, the air conditioning and heating system in the house was inoperable. The
cost to replace the whole system was $3,580. Nancy simply subtracted that amount from
the total appraised value. We find no abuse of discretion by the trial court in using
Nancy's valuation for the Tyler County house. Such a finding requires James' overall
valuation of Nancy's portion of the community estate be reduced by $26,580. 

 We also find no abuse of discretion in the trial court's treatment of the retirement
and Social Security issue. As mentioned above, the trial court may consider, among other
things, the relative financial condition and disparity in earning capacities or of incomes in
making a disproportionate award to one spouse. Murff, 615 S.W.2d at 699. In the instant
case, it was undisputed that while Nancy had worked as a teacher for twenty-nine years,
her income at the time of trial was almost identical to that of James, who had been working
for the Jasper school district in the capacity of Technology Director for four years at the
time of trial. It would have been reasonable for the trial court to infer that James had the
greater earning capacity as he had roughly the same salary as Nancy while having worked
in his current job for only four years as compared to Nancy's twenty-nine years. 
Furthermore, as noted above, for the many years James was self-employed, he failed to
put any money aside for retirement while Nancy had no choice but to contribute to
retirement. We see no abuse of discretion in the trial court's valuation or treatment of the
retirement and Social Security items. 

 Lastly, the award of the 134 acre tract to Nancy was also not an abuse of discretion. 
Again, another of the Murff factors the trial court may consider is the nature of the
property involved. Id. The testimony indicated that the 134 acre tract was burdened with
certain restrictions reserved by Nancy's parents. That was because Nancy's parents, the
Boykins, were very interested that all of the property that was adjacent to the Boykins'
property stay in the family. James fully acknowledged this to be true. James further
acknowledged that, as a practical matter, he did not expect Mr. Boykins to give him
[James] an easement over Boykins' land should James be awarded the 134 acres. The fact
that James, subsequent to the filing of the divorce petition, fully agreed to deed away from
his ownership a tract of land that would have provided the 134 acre tract with access to a
public road could also have been a factor the trial court considered in failing to award the
134 acre tract to James. The fact that Nancy intended to make the Tyler County house her
residence, with the Boykins nearby, could also have been seen by the trial court as a factor
in awarding Nancy the 134 acre tract, since further problems could reasonably be
anticipated if the trial court awarded James the tract. 

 Under the entirety of the record evidence before us, we cannot say that the trial
court clearly abused its discretion in awarding Nancy a disproportionate share of the
community estate. The trial court's division of the community estate was neither arbitrary
nor unreasonable. Worford, 801 S.W.2d at 109. James' two appellate issues are
overruled. The trial court's decree of divorce will be affirmed. 

 AFFIRMED.


 _______________________________

 RONALD L. WALKER

 Chief Justice 



Submitted on March 13, 2002

Opinion Delivered May 2, 2002

Publish

Before Walker, C.J., Burgess and Gaultney, JJ.



CONCURRING OPINION


 I concur in the affirmance of the trial court's judgment. My disagreement is with
the assertion that a trial judge has no discretion -- under any circumstances, not just those
at issue here -- to consider conduct causing the divorce in making a just and right division
of the property when a divorce is granted under section 6.001 of the Family Code. See
Tex. Fam. Code Ann. § 6.001 (Vernon 1998). I write separately because I believe a trial
court should have discretion to consider proven fault. 

 Appellee pleaded fault as a basis for unequal division of the community property. 
Trial courts have wide discretion to consider a variety of factors in determining what is just
and right in dividing community property. See Schlueter v. Schlueter, 975 S.W.2d 584,
589 (Tex. 1998); see Barbara Anne Kazen, Division of Property at the Time of Divorce,
49 Baylor L. Rev. 417, 424-28 (1997). For example, in affirming a 72.9% award of
community property to a wife one court noted "[a] key factor was [the husband's] abusive
and violent nature, which ultimately contributed to the divorce." Faram v. Gervitz-Faram,
895 S.W.2d 839, 844 (Tex.App.--Fort Worth 1995, no writ). Similarly, in a divorce
granted on grounds of insupportability, another court upheld the trial court's consideration
of the fact that one spouse "was at fault in rendering the marriage insupportable." Roberts
v. Roberts, 663 S.W.2d 75, 77 (Tex. App.--Waco 1983, no writ); see prior case, Roberts
v. Roberts, 621 S.W.2d 835, 836 (Tex. App.--Waco 1981, no writ) (divorce granted on
the ground the marriage was insupportable). See also Vautrain v. Vautrain, 646 S.W.2d
309, 312 (Tex. App.--Fort Worth 1983, writ dism'd) (trial court may consider evidence
of fault even if divorce granted on no fault grounds); Clay v. Clay, 550 S.W.2d 730, 734
(Tex. Civ. App.--Houston [1st Dist.] 1977, no writ) (cruelty considered in dividing
property, even when the trial court granted divorce on insupportability). 

 What is "just and right" in dividing the property should not depend on the ground
on which the divorce is granted; the just and right division of property is separate from the
dissolution issue. If one spouse's conduct causes the destruction of the financial benefits
of a particular marriage, benefits on which the other spouse relied, a trial court should
have discretion to consider that factor in dividing the community estate -- regardless of the
basis for granting the divorce.

 __________________________________

 DAVID B. GAULTNEY

 Justice


Concurrence Delivered

May 2, 2002

Publish



DISSENTING OPINION


 I respectfully dissent. The majority finds the trial court erred in considering fault
and I agree. They go on to hold the trial court did not abuse its discretion in the division
of the community estate. (5) I can not reach the same conclusion. It is clear, at least to me,
the trial court considered fault in dividing the community estate. I say it is clear because
it appears the trial court divided the estate according to Ms. Phillips's proposed division
and accepted her assigned values totally. Therefore, I am forced to conclude that the error
found by the majority probably caused the rendition of an improper judgment. Tex. R.
App. P. 44.1(a)(1). Consequently, I would reverse and remand for a new trial on the
property division.




 DON BURGESS

 Justice


Dissent Delivered

May 2, 2002

Publish
1. If Nancy's intent was to make a case for adultery as the "fault" in question, the
record evidence certainly does not support such a case. "Adultery," as used in divorce
proceedings, means the voluntary sexual intercourse of a married person with one not the
husband or wife of the offender. Bell v. Bell, 540 S.W.2d 432, 435 (Tex. Civ. App.--Houston [1st Dist.] 1976, no writ). 
2. Conclusion of Law number three states: "All legal prerequisites to the granting of
the divorce have been met." As neither party complains of the inadequacy of either the
decree or the findings of fact and conclusions of law, we comment no further.
3. The traditional "fault" grounds of "cruelty," "adultery," "conviction of felony,"
and "abandonment" are found in Tex. Fam. Code Ann. §§ 6.002, 6.003, 6.004, 6.005
(Vernon 1998). 
4. We recognize that when there are minor children of the marriage, a divorce petition
must include a suit affecting the parent-child relationship (SAPCR). See Tex. Fam. Code
Ann. §§ 6.406, 6.407 (Vernon 1998); Brown v. Brown, 917 S.W.2d 358, 361 (Tex. App.--El Paso 1996, no writ) (McClure, J., concurring). We also recognize that during a
contested custody hearing, a variety of "sordid events" descriptive of one or both of the
parents'/spouses' acts or omissions during the marriage may be elicited from witnesses. 
While such evidence would be relevant and proper so as to aid the factfinder in its ultimate
decision of "best interest of the child," such "fault-like" evidence would still have no
relevance to division of the community estate where the sole ground for divorce pleaded
was insupportability. 
5. This court has approved unequal divisions, but these were not based upon an
erroneous premise.