**J. Hudson SCHLUETER and Richard Stephen Schlueter, Petitioners,**

**v.**

**Karen Sue SCHLUETER, Respondent.**

**No. 96–1091.**

Supreme Court of Texas.

Argued Oct. 7, 1997.

Decided July 3, 1998.

Rehearing Overruled Oct. 15, 1998.

Thomas M. Alvis, Philip C. Friday, Jr., Kristen A. Algert, Austin, for Petitioners.

John F. Campbell, Mark W. Clemens, Austin, for Respondent.

GONZALEZ, Justice, delivered the opinion of the Court, in which ENOCH, OWEN, BAKER, ABBOTT and HANKINSON, Justices, joined.

This divorce case answers the question of what remedies are available to a spouse alleging fraud on the community committed by the other spouse. The husband transferred various community assets to his father shortly before he filed for divorce. The wife counterclaimed for divorce and brought independent tort claims against her husband and father-in-law, seeking damages for fraud, breach of fiduciary duty, and conspiracy. Based on favorable jury findings, the trial court ordered a disproportionate division of the community estate favoring the wife, and rendered judgment for the wife against the husband and his father for actual and exemplary damages. Holding that a tort cause of action for fraud on the community exists independent of a divorce proceeding, the court of appeals affirmed. 929 S.W.2d 94. We granted writ to resolve a conflict among courts of appeals. Because a wronged spouse has an adequate remedy for fraud on the community through the "just and right" property division upon divorce, we hold that there is no independent tort cause of action between spouses for damages to the community estate. Accordingly, we reverse

the judgment against the husband and remand for a new division of the marital estate. We affirm the remainder of the court of appeals' judgment.

I

Richard and Karen Schlueter married in 1969. In December 1992, Mr. Schlueter began investing in emus. He contributed $3250 of community funds toward two pairs of the birds, but eventually sold his interest to his father, Hudson Schlueter, for $1,000. The emu business was worth at least $10,000 when the sale occurred. Mrs. Schlueter did not know the details of the business and did not find out that her husband had sold his interest to her father-in-law until after Mr. Schlueter filed for divorce.

Shortly before he filed for divorce, Mr. Schlueter accepted a $30,360.41 check from his employer as an incentive for early retirement. Mr. Schlueter turned the check over to his father for deposit in his father's account. His father then wrote himself a check for $12,565, allegedly to reimburse past loans to Mr. Schlueter. About a week later, Mr. Schlueter filed for divorce.

Mrs. Schlueter counterclaimed for divorce and added independent tort claims against her husband and father-in-law for fraud, breach of fiduciary duty, and conspiracy. All of Mrs. Schlueter's claims against her husband and father-in-law involve their depriving the Schlueters' community estate of assets. Mrs. Schlueter makes no claim that she was deprived of her separate property.

The jury heard the fraud and conspiracy claims in a bifurcated trial. The jury found that Mr. Schlueter committed actual and constructive fraud in dealing with the community assets, that he and his father had fraudulently transferred assets between them, and that they had engaged in a civil conspiracy to injure Mrs. Schlueter. The jury found that $12,850 would compensate the community for Mr. Schlueter's and his father's actions. It found that $35,000 would compensate the community for damage caused by the conspiracy. Finally, the jury found that Mr. Schlueter should pay $50,000 and his father $15,000 in exemplary damages.

At a later date, the trial court heard the divorce action without a jury, divided the marital assets, and rendered judgment on the jury verdict against Mr. Schlueter and his father jointly and severally for $12,850. In its Findings of Fact, the trial court determined that the joint and several judgment was part of the community estate. The court also awarded Mrs. Schlueter $30,000 in exemplary damages against her husband and $15,000 in exemplary damages against her father-in-law, and awarded Mrs. Schlueter $18,500 from her husband for attorney's fees on appeal.

The court of appeals affirmed. The court held that a spouse may bring an independent tort claim against the other spouse for fraud for which exemplary damages may be awarded, even when the fraud resulted only in a depletion of community assets and not the wronged spouse's separate estate. 929 S.W.2d at 99–100. The court of appeals based its holding on this Court's abrogation of the doctrine of interspousal immunity in the *Bounds, Price,* and *Twyman* decisions, and concluded that a person may bring any cause of action against his or her spouse. 929 S.W.2d at 99–100 (construing *Twyman v. Twyman,* 855 S.W.2d 619, 624 (Tex.1993); *Price v. Price,* 732 S.W.2d 316, 319 (Tex. 1987); and *Bounds v. Caudle,* 560 S.W.2d 925, 927 (Tex.1977)). The court of appeals also affirmed the judgment against the father-in-law, holding that the trial court had not abused its discretion in admitting into evidence a copy of a divorce decree involving Mr. Schlueter's brother.

Relying on *Belz v. Belz,* 667 S.W.2d 240, 247 (Tex.App.—Dallas 1984, writ ref'd n.r.e.), and *In re Marriage of Moore,* 890 S.W.2d 821, 829 (Tex.App.—Amarillo 1994, no writ), Mr. Schlueter alleges that the court of appeals committed reversible error in recognizing a separate cause of action for fraud on the community. Mr. Schlueter and his father, in the father's only point of error, also assert that the court of appeals erred in holding that the trial court did not abuse its discretion in admitting into evidence a copy of the decree from Mr. Schlueter's brother's divorce.

## II

The court of appeals reads the *Twyman, Price,* and *Bounds* decisions too broadly; these decisions do not control this case. In *Bounds,* we dealt with whether the interspousal immunity doctrine prevented a deceased woman's children from suing their stepfather for their mother's wrongful death. *Bounds,* 560 S.W.2d at 925. The stepfather had allegedly shot and killed his wife. We concluded that interspousal immunity should be abolished for willful or intentional torts. *Id.* at 926–27. From a policy perspective, we stated that suits for willful and intentional torts such as the physical attack in that case would not disrupt domestic tranquility in "a home which has already been strained to the point where an intentional physical attack could take place." *Id.* at 927.

We re-examined the doctrine in *Price v. Price,* 732 S.W.2d 316 (Tex.1987). A wife sued her husband for negligence in causing her injuries in a motorcycle accident. Again this Court considered and rejected the argument that "peace and harmony" in the home would be damaged by suits between spouses, commenting that "[i]t is difficult to fathom how denying a forum for the redress of any wrong could be said to encourage domestic tranquility." *Id.* at 318. We followed up on our holding in *Bounds* by stating, "We now abolish [the interspousal immunity doctrine] completely as to any cause of action. We do not limit our holding to suits involving vehicular accidents only." *Id.* at 319.

Finally, in *Twyman,* we expressly adopted the tort of intentional infliction of emotional distress, and a plurality held that such a claim could be brought in a divorce proceeding. *Twyman,* 855 S.W.2d at 622, 624–26. The plurality noted that under *Bounds* and *Price,* there was no legal impediment to bringing a tort claim in a divorce action "based on either negligence or an intentional act such as assault or battery." *Twyman,* 855 S.W.2d at 624. Of course, by its facts, *Twyman* expanded that statement by allowing an intentional tort claim for emotional distress, which does not necessarily involve the physical aspects of assault or battery.

The salient characteristic distinguishing *Bounds, Price,* and *Twyman* from the case before us is that all three involved personal injury tort claims. *Twyman,* 855 S.W.2d at 621 (intentional infliction of emotional distress); *Price,* 732 S.W.2d at 316 (negligence claim for personal injuries); *Bounds,* 560 S.W.2d at 926 (wrongful death). *Cf. Cleaver v. George Staton Co., Inc.,* 908 S.W.2d 468, 471 n. 2 (Tex.App.—Tyler 1995, writ denied) (distinguishing *Twyman,* which involved outrageous spousal conduct, and noting that the trial court could sort out the husband's claims against wife for breach of fiduciary duty and fraud on community estate in the property division, not by a separate cause of action). In discussing the potential for double recovery in *Twyman,* the Court pointed out that recovery for personal injuries of a spouse, including pain and suffering, is the separate property of the injured spouse, and therefore does not add to the marital estate. *Twyman,* 855 S.W.2d at 625 n. 20 (citing TEX. FAM.CODE § 5.01(a)(3) (Act of May 31, 1969, 61 st Leg., R.S., ch. 888, 1969 Tex. Gen. Laws 2707, 2726, *repealed by* Act of April 3, 1997, 75 th Leg., R.S., ch. 7, § 3, 1997 Tex. Gen. Laws 8, 43)) (current version at TEX. FAM. CODE ANN. § 3.001(3)).

Likewise, in response to the concern that interspousal suits would result in fraud and collusion between the participants, the *Price* court stated, "we are unable to distinguish interspousal suits from other actions for personal injury." *Price,* 732 S.W.2d at 318. Therefore, despite its broad language stating that the Court was abolishing the interspousal immunity doctrine "completely as to any cause of action," *id.* at 319, the action in *Price* was one for personal injury, for which any recovery would be separate property of the injured spouse.

Moreover, a factor in *Price* that weighed heavily toward abolishing interspousal immunity "as to any cause of action" was the need to remedy the problem of denying a litigant a forum for the redress of a wrong. *Id.* at 318–19. The Court summed up the holding by saying that the result in the case was "compelled by the fundamental proposition of public policy that the courts should afford [such] redress." *Id.* at 320. However, redress is available in the present case without

the creation of a separate tort cause of action between spouses.

Mrs. Schlueter sued her husband for improperly depleting community assets. This state's community property system provides that upon divorce, the trial court must enter a division of a married couple's estate "in a manner that the court deems just and right," considering the rights of the parties and any children of the marriage. TEX. FAM.CODE ANN. § 7.001. Such a standard may at times lead to a disproportionate division of assets and liabilities of the parties, depending on the circumstances that courts may consider in refusing to divide the marital estate equally.

■ As this Court stated in *Cameron v. Cameron*, 641 S.W.2d 210, 223 (Tex.1982), "Community property owes its existence to the legal fact of marriage, and when the parties to that compact determine their relationship should end, property acquired during marriage is and should be divided among them in a just and right manner." This is distinguishable from recovery of separate property through an independent tort, which we allowed in *Twyman*, because "separate property . . . owes its existence to wholly extramarital factors, things unrelated to the marriage. In relation to that property, the parties are, in essence, strangers; they are separate." *Cameron*, 641 S.W.2d at 223. With these differences in mind, we hold that the well-developed "just and right" standard should continue to be the sole method used to account for and divide community property upon divorce.

Of course, there are also aspects of this state's community property system that provide additional remedies against a spouse for improper conduct involving the community estate. Texas recognizes the concept of fraud on the community, which is a wrong by one spouse that the court may consider in its division of the estate of the parties and that may justify an unequal division of the property. *See Belz v. Belz*, 667 S.W.2d 240, 247 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). As the court in *Belz* aptly described it:

> [A] claim of fraud on the community is a means to an end, either to recover specific property wrongfully conveyed, . . . or . . .

to obtain a greater share of the community estate upon divorce, in order to compensate the wronged spouse for his or her lost interest in the community estate.

*Id.* at 246–47. Just as in the present case, *Belz* involved alleged intentional deprivation of the wife's share of community assets. Nevertheless, despite the intentional nature of the claim, because the fraud was perpetrated on the community, the court correctly distinguished it from cases involving personal injuries for which recovery belongs to the separate estate. *Id.* at 246.

■ Additionally, it is well settled that a trial court may award a money judgment to one spouse against the other in order to achieve an equitable division of the community estate. *See Murff v. Murff*, 615 S.W.2d 696, 699 (Tex.1981) (allowing money judgment against husband in division of community property where he had substantial sums in savings before separation that had disappeared by the time of trial). Of course, the money judgment can only be used as a means for the wronged spouse to recoup the value of his or her share of the community estate lost through the wrongdoer spouse's actions. *See Mazique v. Mazique*, 742 S.W.2d 805, 808 (Tex.App.—Houston [1st Dist.] 1987, no writ). Because the amount of the judgment is directly referable to a specific value of lost community property, it will never exceed the total value of the community estate. Still, a sound policy in favor of the wronged spouse is advanced: he or she should not suffer just because when it is time to divide the community, the other spouse has depleted the estate such that there is not enough money or property left to effect a just and right division.

The case of *In re Marriage of Moore*, 890 S.W.2d 821 (Tex.App.—Amarillo 1994, no writ), illustrates this aspect of marital property law. Mr. Moore filed for divorce, and Mrs. Moore counterclaimed for divorce and sought actual and exemplary damages for breach of fiduciary duty to the community estate. *Id.* at 825. Among other things, she alleged that Mr. Moore had conveyed community property to third parties in breach of his fiduciary duty not to commit fraud on the

community. *Id.* at 825–26. The trial court found that Mr. Moore had breached his fiduciary duty, and assessed damages against him separate from the division of the marital estate. *Id.* at 825. Absent a voluntary remittitur by Mrs. Moore of the damages for breach of fiduciary duty, the court of appeals held that it would remand to the trial court for a new property division. *Id.* at 843.

The court correctly said:

[A] trial court may award a money judgment to one spouse, even as damages for the other spouse's fraud on the community. However, that type of personal judgment is merely a means for recouping the defrauded spouse's share of the community property lost as a result of the wrongdoing spouse's breach of the trust relationship. Such a recovery is not awarded as "separate damages" for an independent cause of action.

*Id.* at 828 (citations omitted). The court concluded that the only recourse available to Mrs. Moore for Mr. Moore's breach of fiduciary duty to the community estate was an action for fraud on the community. *Id.* at 827. The court of appeals correctly determined that no independent cause of action exists in Texas to recover separate damages when the wrongful act defrauded the community estate. *Id.* at 829.

■ Trial courts also have wide discretion and are allowed to take many factors into consideration in making a just and right division, *see Murff,* 615 S.W.2d at 698–99, including wasting of community assets. *See* Barbara Anne Kazen, *Division of Property at the Time of Divorce,* 49 BAYLOR L.REV. 417, 424–28 (1997) (discussing factors that may be considered by a trial court in effecting a just and right property division). This too allows injured spouses like Mrs. Schlueter to recover her appropriate share of not only that property existing in the community at the time of divorce, but also that which was improperly depleted from the community estate. Waste of community assets is similar to the allegations against the husband here: that without the wife's knowledge or consent, he wrongfully depleted the community of assets of which Mrs. Schlueter was entitled a

share. Such behavior is properly considered when dividing a community estate.

■ Mrs. Schlueter argues that allowing a separate tort cause of action for actual fraud is necessary so that exemplary damages may be awarded for the intentional acts of the wrongdoer spouse. However, heightened culpability does not change the essential character of the wrong: a deprivation of community assets as opposed to a tort committed against a person or his or her separate property. As discussed, the "just and right" standard with accompanying consideration of a wrongdoer spouse's fraud on community assets provides wronged spouses such as Mrs. Schlueter with redress. Moreover, as we have previously held, "recovery of punitive damages requires a finding of an independent tort with accompanying actual damages." *Twin City Fire Ins. Co. v. Davis,* 904 S.W.2d 663, 665 (Tex.1995); *Federal Express Corp. v. Dutschmann,* 846 S.W.2d 282, 284 (Tex.1993); *cf. Amoco Prod. Co. v. Alexander,* 622 S.W.2d 563, 571 (Tex.1981) (explaining in breach of contract action that even if breach is malicious, intentional, or capricious, punitive damages not recoverable without a tort). Because of our holding in the present case that there is no independent tort cause of action for wrongful disposition by a spouse of community assets, the wronged spouse may not recover punitive damages from the other spouse.

■ However, despite the inappropriateness of punitive damages, it is a logical extension of a standard that calls for a "just and right" division to allow the court to consider that a spouse not only deprived the community of assets to the detriment of the other spouse, but may have done so with dishonesty of purpose or intent to deceive. *See Land v. Marshall,* 426 S.W.2d 841, 846 n. 3 (Tex.1968). This is the culpability needed for actual fraud on the community, which is one of the allegations by Mrs. Schlueter against Mr. Schlueter. Therefore, while we hold that a separate and independent tort action for actual fraud and accompanying exemplary damages against one's spouse do not exist in the context of a deprivation of community assets, if the wronged spouse can prove the heightened culpability of actual

fraud, the trial court may consider it in the property division.[1]

## III

With regard to the causes of action against Mr. Schlueter's father, he has not argued that these separate and independent tort claims against him as a third-party defendant should also be abolished. Therefore, we do not reach that issue. We note that the trial court's $12,850 judgment of actual damages against Mrs. Schlueter's father-in-law was awarded to the community estate. That judgment represents an asset returned to the community estate, making it monetarily whole. Therefore, the trial court, in its just and right division, may not effect a disproportionate property division *solely* to make up for that formerly lost asset. However, as we have already discussed, the trial court may take into account Mr. Schlueter's conduct that resulted in a defrauding of the community estate.

## IV

As previously noted, both Mr. Schlueter and Mr. Schlueter's father, in his only point of error, assert that the trial court committed reversible error in admitting evidence regarding prior acts by Mr. Schlueter's father involving his other son's divorce. We conclude that the court of appeals has correctly decided this issue. 929 S.W.2d at 97–99.

## V

 Finally, Mr. Schlueter complains that the trial court's award of $18,500 to Mrs. Schlueter for attorney's fees on appeal was erroneous because the trial court had previously instructed the jury that it could consider attorney's fees as part of its exemplary damages award against him. Therefore, he argues that a separate attorney's fees award amounts to a double recovery. Because we have reversed the exemplary damage award against him, there is no possibility of double recovery, and we need not consider this argument.

However, a party should not be penalized for taking a successful appeal. Because we have reversed the damages award against Mr. Schlueter, we also reverse the award for attorney's fees on appeal.

For all the foregoing reasons, we reverse the court of appeals' judgment against Richard Schlueter for actual and exemplary damages, and attorney's fees on appeal, and remand this cause to the trial court for a new property division. We affirm the remainder of the court of appeals' judgment.

HECHT, Justice, joined by PHILLIPS, Chief Justice, dissenting.

I respectfully dissent. If one spouse assaults the other, the wronged spouse can obtain not only a disproportionate share of the estate in a divorce proceeding but, if necessary to compensate fully for the wrong done, a judgment for actual damages and, on the requisite showing, punitive damages against the wrongdoer.[1] The same rule applies if one spouse intentionally inflicts emotional distress on the other[2] or negligently injures the other.[3] But if one spouse defrauds the other of an interest in community property, the wronged spouse's sole redress is a disproportionate share of the estate in a divorce proceeding. That is the Court's holding in this case. The Court's only rationale for treating fraud on a spouse differently from other intentional torts is that fraud does not involve personal injuries. Why recovery should depend on whether damages are personal or economic the Court does not explain, except to say at one point that "redress is available in the present case without the creation of a separate tort cause of action between spouses."[4] But the redress of a disproportionate division of the community is equally available for torts causing personal injuries, yet that has not kept the Court from

**1.** For a thorough discussion of issues relevant to this case, *see* Bradley L. Adams, *The Doctrine of Fraud on the Community*, 49 BAYLOR L.REV. 445, 450–64 (1997).

**1.** *Bounds v. Caudle,* 560 S.W.2d 925 (Tex.1977).

**2.** *Twyman v. Twyman,* 855 S.W.2d 619 (Tex. 1993).

**3.** *Price v. Price,* 732 S.W.2d 316 (Tex.1987).

**4.** *Ante* at 587–588.

providing for recovery of actual and punitive damages if necessary to fully compensate the wronged spouse. The Court does not, indeed cannot, explain why an uneven division of the community estate is inadequate relief for personal injuries but adequate for fraud.

Moreover, "the creation of a separate tort cause of action" for fraud is unnecessary. It was necessary for the Court to create a tort cause of action for intentional infliction of emotional distress because one had never existed in Texas. But a cause of action for fraud has existed for centuries. All that is necessary for it to be asserted between spouses is for the bar of interspousal immunity that prevented one spouse's suing another to be removed, and that has already been done repeatedly. But today, that bar is resurrected and replaced for one kind of claim—fraud. I see no reason why spouses should be allowed to sue each other for assault, intentional infliction of emotional distress, and negligence, but not for fraud.

The Court's rule creates anomalies that cast doubt on its wisdom. For example, I suppose one spouse can still sue the other for fraud relating to separate property and recover damages as in any other case. Only when a spouse defrauds the other out of community property is recovery limited to a division of the estate in a divorce proceeding. Also, to the extent such fraud inflicts emotional distress, the wronged spouse will be entitled to recover mental anguish damages and punitive damages in excess of the community directly against the wrongdoer. But the wronged spouse's economic damages must be satisfied from the community estate. It seems exactly backwards to me to allow full recovery of mental anguish and punitive damages that have no definite measure but only limited recovery of economic damages that can be determined to the penny.

Nothing in the nature of joint interest in property precludes a fraud action. A partner, for example, can sue another partner for fraud that injures the partnership.[5] Nor

does the fact that recovery would go to the community, in which the wrongdoer has an interest, preclude a fraud action. Again, the same is true of one partner's suit against another for defrauding the partnership. The wrongdoer is simply denied any benefit from the recovery. Any justification for the Court's rule must therefore lie in the nature of the spousal relationship. But while there are good reasons not to allow spouses to sue each other at all, if that historic immunity is to be removed, as the Court has held it should be, it is difficult to see why it should be removed for only some causes of action and not others.

The record is unclear whether Karen Sue Schlueter can obtain full compensation for her husband's fraud on the community by an uneven division of the estate. From the district court's findings, it appears that the estate had a net value of $122,600. If that estate were evenly divided, each spouse would receive $61,300. The jury found that the community's actual damages were $47,-850, and that $50,000 punitive damages should be assessed Karen's husband, Richard Stephen Schlueter. His half of the community is less than the damages awarded by the jury. Thus, awarding Karen the entire community estate would not fully compensate her for the damages found by the jury. The district court reduced those damages to $42,-850 for reasons that are not entirely clear. Richard's share of the community would still not be enough to cover those reduced damages unless it was at least 35 percent.

This is not an isolated case. In *Vickery v. Vickery,*[6] Glenn Vickery deceived his wife, Helen, into agreeing to a divorce on the pretense of removing her share of the community from liability to a potential judgment against him. In fact, Glenn immediately married Helen's former best friend and attempted to retain a large portion of the community for himself. The district court awarded Helen actual and punitive damages against Glenn, in addition to an uneven divi-

5. Tex.Rev.Civ. Stat. Ann. art. 6132b–4.05 ("A partner is liable to a partnership and the other partners for a breach of the partnership agreement or for a violation of a duty to the partnership or the other partners under [the Texas Revised Part-

nership Act] that causes harm to the partnership or the other partners.").

6. 1997 WL 751995 (Tex.App.—Houston [1st Dist.] 1997, pet. pending).

sion of the community. Applying the rule announced in the present case, the Court reverses the lower courts in *Vickery.* Because of the size of the Vickery estate, it may be possible for Helen to obtain complete redress, although that is far from clear. In any event, full compensation to Helen is not a matter of concern to the Court, any more than full compensation to Karen Schlueter is.

There were strong reasons to preserve interspousal immunity from suit. There were even stronger reasons not to create a tort of intentional infliction of emotional distress and allow it to be asserted between spouses.[7] But given that the Court has consistently rejected arguments against tort claims between spouses, little reason survives to justify allowing claims for everything but fraud, except perhaps that enough is enough. If that is the real rationale for today's decision, it simply comes too late. I would allow one spouse to recover damages from the other for fraud on the community. Accordingly, I respectfully dissent.

SPECTOR, Justice, dissenting.

The Court today holds that fraud on the community is not an independent tort for which a defrauded spouse can recover actual and punitive damages. Although a disproportionate share of the community estate may serve as an appropriate remedy, I believe that Karen Schlueter should be able to recover from Richard Schlueter the punitive damages found by the jury as well. Accordingly, I dissent.

The Court's decision today signifies a retreat from its abrogation of the interspousal immunity doctrine in *Price v. Price,* 732 S.W.2d 316 (Tex.1987). Six years after *Price,* in *Twyman v. Twyman,* 855 S.W.2d 619, 624 (Tex.1993), we stated that "there appears to be no legal impediment to bringing a tort claim in a divorce action based on either negligence or an intentional act such as assault or battery." However, while the Court today affirms the fraud judgment against her father-in-law, the Court nevertheless prohibits Karen Schlueter from re-

covering from her husband on the same fraud cause of action.

Adopting the Court's approach, the trial judge will simply take the tortfeasor-spouse's conduct into account in dividing the community estate. The fraudulently transferred, converted, or wasted community property is rightly returned to the community through a resulting trust, a money judgment against the tortfeasor-spouse, or, as here, a judgment against a third party. These reimbursed funds are community property, in which the tortfeasor-spouse retains a property interest.

While the trial court may consider the tortfeasor-spouse's actions in making a just and right property division, his or her separate property will not be affected. I believe that the wronged spouse should be able to reach the defrauding spouse's separate property to recover punitive damages, in addition to a share of the community, for actual fraud on the community. *See, e.g., Mazique v. Mazique,* 742 S.W.2d 805, 807–08 (Tex. App.—Houston [1st Dist.] 1987, no writ) (awarding a money judgment for actual and punitive damages against husband who had defrauded wife's interest in community estate); *see also* Thomas M. Featherston, Jr., *Marital Property Law—A Trusts & Estates Perspective,* STATE BAR OF TEX., ADVANCED FAMILY LAW COURSE 13, 14 (1997) (citing *Mazique* ).

Punitive damages punish wrongdoers and serve as an example to others. *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 17 (Tex.1994); *Hofer v. Lavender,* 679 S.W.2d 470, 474 (Tex.1984). "Our duty in civil cases, then, ... is to ensure that defendants who deserve to be punished in fact receive an appropriate level of punishment...." *Moriel,* 879 S.W.2d at 17. The imposition of punitive damages here would serve the very purposes for which they were designed: to punish the wrongdoer and deter others from similar conduct.

In a related context, a partner in a partnership may recover punitive damages from

7. *Twyman,* 855 S.W.2d at 626 (Phillips, C.J., concurring and dissenting); *id.* at 629 (Hecht, J., concurring and dissenting).

other partners for breach of their fiduciary duty, a duty analogous to that owed between spouses. *See Hawthorne v. Guenther,* 917 S.W.2d 924, 936 (Tex.App.—Beaumont 1996, writ denied) ("An award of exemplary damages is, therefore, supported by a finding that the partner's breach of fiduciary duty was willful and intentional.") (citing *International Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567, 583–84 (Tex.1963)); *Miller v. Kendall,* 804 S.W.2d 933, 944 (Tex.App.—Houston [1st Dist.] 1990, no writ) (finding sufficient evidence to support punitive damages award to one partner against another); *Cheek v. Humphreys,* 800 S.W.2d 596, 599 (Tex.App.—Houston [14th Dist.] 1990, writ denied) ("Exemplary damages are proper where a fiduciary has engaged in self-dealing.") (citing *Texas Bank & Trust Co. v. Moore,* 595 S.W.2d 502, 510 (Tex.1980)). I see no reason to reach a different result in the divorce context.

\* \* \*

This Court is able to fashion remedies to right wrongs. *See Yamini v. Gentle,* 488 S.W.2d 839, 843 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.) ("[E]quity leaves the way open to punish frauds and to redress wrongs perpetrated by means of fraud in whatever form it may appear."). Presented with this opportunity, the Court today fails to do so.