Opinion issued April 8, 2004







            











In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-02-01118-CV
___________
 
BURT ALAN GINSBURG, M.D., Appellant
 
V.
 
CHERNOFF/SILVER & ASSOCIATES, INC., Appellee
 

 
 
On Appeal from the 245th District Court
Harris County, Texas
Trial Court Cause No. 2001-39556-A
 

 
 
O P I N I O N
          Appellant, Burt Alan Ginsburg, M.D., challenges the trial court’s rendition of
summary judgment on third-party claims that Dr. Ginsburg asserted against appellee,
Chernoff/Silver & Associates, Inc. (Chernoff), in the divorce proceedings between
Dr. Ginsburg and his ex-wife, Susan Deena Ginsburg (Susan).


 In two issues, Dr.
Ginsburg contends that the trial court erred in granting (1) summary judgment on his
claims against Chernoff for conversion, conspiracy to convert, fraud, and conspiracy
to defraud and (2) Chernoff’s motion to strike Dr. Ginsburg’s third amended petition,
which denied him leave to amend his pleadings to add additional claims.
          We affirm.
Facts and Procedural Background
          The Ginsburgs were married in 1981 and, during the course of their marriage,
had two children. For several years after Dr. Ginsburg and Susan were married,
Susan worked for Chernoff, a public relations and advertising company. Susan
subsequently left Chernoff and established her own public relations company, Global
Communications Works, Inc. (Global).


 Global continued to do business with
Chernoff and relied on Chernoff as a vendor for production services and media
buying.
          In August 2001, Dr. Ginsburg filed an original petition for divorce and, in
December 2001, Susan filed a counterpetition for divorce. In April 2002, Dr.
Ginsburg filed a second amended petition for divorce, naming Global and Chernoff
as additional parties to the divorce proceedings and asserting claims against them for
conversion, conspiracy to convert, fraud, and conspiracy to defraud with respect to
community monies earned by Susan or Global during the Ginsburgs’ marriage. In his
second amended petition, Dr. Ginsburg alleged, in part, as follows:
[Susan], GLOBAL, and CHERNOFF entered into an agreement
whereby [Susan] and/or GLOBAL transferred large sums of community
monies to CHERNOFF under the pretense of paying CHERNOFF for
services rendered or to be rendered. CHERNOFF provided [Susan]
and/or GLOBAL with false invoices for these so-called “services” and
agreed to hold and hide said monies from [Dr. Ginsburg] until the
divorce case between [Dr. Ginsburg] and [Susan] was completed.

Dr. Ginsburg asserted that Susan directed Global to make payments to Chernoff in
an attempt to hide community assets from him.
          The record indicates that, before Dr. Ginsburg filed his original petition in the
instant case, Susan had filed a petition for divorce in November 2000. In December
2000, at Susan’s direction, Global paid Chernoff a total of $757,000 based on
invoices from Chernoff for work that Chernoff had not performed. In her deposition,
Susan admitted that she had contacted representatives of Chernoff and had discussed
her desire to “hide” these assets of her company to “protect” her business and her
children in her impending divorce. Chernoff repaid the entire $757,000 to Global in
March 2001. Subsequently, in April 2001, Susan dismissed her divorce action.
          After Dr. Ginsburg filed his petition for divorce, Global, in November 2001,
delivered checks totaling $149,799.88 to Chernoff as payment for services rendered
by third-party vendors. Chernoff subsequently determined that Global did not owe
these payments, and Chernoff delivered the $149,799.88 to its counsel to hold,
pending an agreed division of the marital estate. In January and March 2002, Global
sent Chernoff an additional $57,425 in prepayments for anticipated work. Chernoff
presented summary judgment evidence indicating that, after it determined that it was
not owed such funds, Chernoff returned the $57,425 to Global in April 2002. As
remedies for his claims against Global and Chernoff for their allegedly “wrongful and
tortious conduct,” Dr. Ginsburg sought actual and exemplary damages.
          In July 2002, Dr. Ginsburg and Susan reached a mediated settlement agreement
dividing the marital estate and establishing their rights and responsibilities as joint
managing conservators of their children.


 As part of the agreement, Dr. Ginsburg
received all of the $149,799.88 held in trust by Chernoff’s counsel.


 With respect to
Dr. Ginsburg’s pending claims against Chernoff, the settlement agreement read, in
part, as follows:
All claims, if any exist, and resulting damages therefrom, if any exist,
being made in this litigation against [Chernoff] are hereby awarded in
their totality to [Dr. Ginsburg]. [Susan] does not warrant or represent
that any such claims are valid. [Susan]’s assignment of such claims, if
they exist, against [Chernoff] is in the nature of a quitclaim assignment,
without warranty. The claim(s), if any, against [Chernoff] shall be
severed out of this case, allowing the parties to obtain a divorce.




          Chernoff subsequently filed a motion for summary judgment, based on
traditional and “no evidence” grounds,


 on all of Dr. Ginsburg’s third-party claims. 
Dr. Ginsburg responded to Chernoff’s motion and filed a third amended petition for
divorce, in which he asserted additional third-party claims against Chernoff for unjust
enrichment and breach of contract. Chernoff then filed a motion requesting that the
trial court strike Dr. Ginsburg’s third amended petition and deny him leave to amend
his pleadings. Following a hearing, the trial court struck Dr. Ginsburg’s third
amended petition, granted Chernoff’s motion for summary judgment on all of Dr.
Ginsburg’s third-party claims, and severed those claims into this cause.
 
Summary Judgment
          In his first issue, Dr. Ginsburg argues that the trial court erred in granting
summary judgment for Chernoff on Dr. Ginsburg’s third-party claims for conversion,
conspiracy to convert, fraud, and conspiracy to defraud.
          We may affirm the granting of a traditional summary judgment motion only
when the record shows that the movant has disproved at least one element of each of
the plaintiff’s claims or established all elements of an affirmative defense to each
claim. See Tex. R. Civ. P. 166a(c); Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420,
425 (Tex. 1997). A movant has the burden of showing that there is no genuine issue
of material fact and that it is entitled to judgment as a matter of law. Nixon v. Mr.
Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985). Whether reviewing a traditional
or “no evidence” summary judgment, we assume that all evidence favorable to the
non-movant is true and indulge every reasonable inference and resolve all doubts in
favor of the non-movant. Id. at 548-49; Spradlin v. State, 100 S.W.3d 372, 377(Tex.
App.—Houston [1st Dist.] 2002, no pet.). A no-evidence summary judgment motion
may not properly be granted if the non-movant brings forth more than a scintilla of
evidence to raise a genuine issue of material fact on the challenged elements. Tex.
R. Civ. P. 166a(i); Spradlin, 100 S.W.3d at 377.
          In its order granting summary judgment in favor of Chernoff, the trial court did
not state the specific grounds for its ruling. Therefore, we will affirm the judgment
of the trial court if any of the theories advanced by Chernoff in its motion for
summary judgment is meritorious. See Carr v. Brasher, 776 S.W.2d 567, 569 (Tex.
1989); Mellon Serv. Co. v. Touche Ross & Co., 17 S.W.3d 432, 435 (Tex.
App.—Houston [1st Dist.] 2000, no pet.).
          As one of the grounds in its motion for summary judgment, Chernoff argued
that Dr. Ginsburg could not, as a matter of law, present any evidence of damages
resulting from Chernoff’s alleged participation in Susan’s attempts to “hide”
community monies. In support of this ground, Chernoff argued that, because Dr.
Ginsburg and Susan had agreed (1) to release each other generally “from any claims
that either may hold against the other,” (2) to non-suit Dr. Ginsburg’s third-party
claims against Global, and (3) to consider their settlement agreement a “fair and just
division” of the marital estate, Dr. Ginsburg could not recover, from Chernoff, monies
allegedly due to the community estate.



          Chernoff relies on Cohrs v. Scott, 338 S.W.2d 127 (Tex. 1960), as support for
its contention that, as a result of the settlement agreement, Dr. Ginsburg could not,
as a matter of law, obtain a recovery against Chernoff because he could not present
evidence of damages to himself or to the community. In Cohrs, a wife sued her
husband for divorce and asserted third-party claims against Cohrs for participating
in the husband’s allegedly fraudulent use of community funds to purchase two
Cadillac automobiles for the use of the husband’s “woman companion.” Id. at 128. 
The wife reached an agreement with the husband concerning the division of the
marital estate, “subject to [her] claim against Cohrs,” and the trial court subsequently
granted an instructed verdict for Cohrs. Id.
          The Texas Supreme Court affirmed the trial court’s judgment and discussed its
holding, in relevant part, as follows:
Assuming a fraud, we are unable to find injury to [the wife] or to the
community estate. After the above evidence had been developed, [the
wife] entered into an agreement with [the husband] for an amicable
division of their community estate, and judgment was entered thereon. 
This judgment, from which no appeal has been taken, is presumed to
have equitably adjusted and divided the estate of the spouses, taking
into consideration all claims and counterclaims between them. Under
that agreement and judgment, [the wife] received substantial properties
and [the husband] was left with substantial properties. Beyond any
question, as between [the husband] and Cohrs, [the husband] was the
principal actor as to [the property furnished to a third-party], and the
fraud on [the wife].
 
There are cases which say that where a husband perpetrates a fraud upon
the wife by the making of excessive gifts of community property to third
persons with a fraudulent intent, she is entitled to recover against the
property of the husband and against third possessors. But under the
facts before us, the fraud having been initiated and carried out mainly by
the husband, she must look primarily to him and his property to right the
wrong. The trial court here, in dividing the community property, and
the parties in agreeing to such settlement, presumably compensated [the
wife] for any loss she may have suffered on the purchase and
disposition of the Cadillacs.
 
This holding makes unnecessary serious questions as to whether the
pleadings of [the wife] would support a judgment as to automobiles as
a separate item of recovery.

Id. at 133 (footnote omitted) (emphasis added).
          Dr. Ginsburg does not dispute that the holding in Cohrs has never been
overruled and is still good law. Rather, he contends that, although the Texas Supreme
Court “has abolished the interspousal claim of fraud against the community, it
continues to recognize fraud against a third party,” citing Schlueter v. Schlueter, 975
S.W.2d 584, 590 (Tex. 1998). Dr. Ginsburg also contends that Cohrs does not apply
to this case because (1) the holding in Cohrs was limited to the specific facts
presented in that case; (2) under the terms of the settlement agreement here, he
retained the right to pursue his claims against Chernoff; and (3) public policy favors
settlement of disputes.
          In Schlueter, the Texas Supreme Court considered whether a wife could pursue
claims against her husband and father-in-law for fraud on the community. 975
S.W.2d at 585. The court reversed the trial court’s judgment against the husband and
held that, “[b]ecause a wronged spouse has an adequate remedy for fraud on the
community through the ‘just and right’ property division upon divorce, we hold that
there is no independent tort cause of action between spouses for damages to the
community estate.” Id. In reaching its holding, the court drew a distinction between
its previous holdings recognizing a spouse’s claim against another spouse for the
recovery of personal injury damages, which are separate property, and a claim for
improperly depleting community assets, which are community property. Id. at 587-88. However, the court specifically noted that its holding did not reach the issue of
whether “separate and independent tort claims” asserted by a spouse against a third
party for recovery of community assets should also be abolished. Id. at 590. 
Therefore, Schlueter did not reach the issue presented here and in Cohrs.
          The Texas Supreme Court, in reaching its holding in Cohrs, did acknowledge
that it was doing so “under the facts before [it].” 338 S.W.2d at 133. However, the
circumstances presented here are closely similar to the facts presented in Cohrs. 
None of the parties has challenged the trial court’s final decree of divorce, which
incorporated Dr. Ginsburg’s and Susan’s settlement agreement concerning the
division of the marital estate. Moreover, the basis for Dr. Ginsburg’s claims against
Chernoff was the allegation that Susan, acting through Global, had perpetrated a
fraud or conversion on the community by attempting to hide community monies—in
essence, that Susan was the party who had “initiated and carried out mainly” the
alleged fraud and conversion. See id. We also note that, Dr. Ginsburg, as part of the
settlement agreement, did retain his right to pursue his pending claims against
Chernoff. However, in Cohrs, the court specifically noted that the spouses had
“reached an agreement on a division of their property, subject to [the wife’s] claim”
against the third-party defendant. Id. at 128 (emphasis added). Thus, the present case
does not differ substantively from Cohrs.
          In regard to Dr. Ginsburg’s argument that applying the Cohrs holding to this
and similar cases will discourage the amicable settlement of divorce proceedings prior
to the resolution of pending claims against third parties, we note that our holding is
limited to the specific facts presented here, which are strikingly similar to those
presented in Cohrs. We also emphasize that, in reaching its holding in Cohrs, the
Texas Supreme Court recognized and reaffirmed the right of a spouse to seek
recovery of damages “against the property of [the other spouse] and against third
possessors” for fraudulent transfers of community property. Id. at 133. Moreover,
as an intermediate appellate court, we are constrained to apply the holdings of our
superior courts, when applicable, regardless of public policy concerns. See Lubbock
County, Texas v. Trammel’s Lubbock Bail Bonds, 80 S.W.3d 580, 585 (Tex. 2002);
see also Swilley v. McCain, 374 S.W.2d 871, 875 (Tex. 1964) (“After a principle, rule
or proposition of law has been squarely decided by the Supreme Court, or the highest
court of the State having jurisdiction of the particular case, the decision is accepted
as a binding precedent by the same court or other courts of lower rank when the very
point is again presented in a subsequent suit between different parties.”).
          The rationale and the holding expressed by the Texas Supreme Court in Cohrs
are applicable to the facts presented here. Thus, we hold that, as a result of the
settlement agreement dividing the marital estate, Dr. Ginsburg could not present
evidence sufficient to raise a material fact issue concerning the element of damages
as to his claims against Chernoff for conversion, conspiracy to convert, fraud, and
conspiracy to defraud. Accordingly, we further hold that the trial court did not err in
rendering summary judgment in favor of Chernoff on these claims.
          We overrule Dr. Ginsburg’s first issue.
Amendment of Pleadings
          In his second issue, Dr. Ginsburg contends that the trial court erred in granting
Chernoff’s motion to strike Dr. Ginsburg’s third amended petition and to deny him
leave to amend his pleadings to add third-party claims against Chernoff for breach of
contract and unjust enrichment, as well as claims for loss of use and exemplary
damages. As grounds for its motion, Chernoff argued that Dr. Ginsburg’s third
amended petition was filed fewer than seven days before the summary judgment
hearing and constituted unfair surprise and prejudice. See Tex. R. Civ. P. 63;
Goswami v. Metropolitan Sav. & Loan Ass’n, 751 S.W.2d 487, 490 (Tex. 1988). We
review a trial court’s decision to deny a party leave to amend his pleadings for abuse
of discretion. Hardin v. Hardin, 597 S.W.2d 347, 350-51 (Tex. 1980).
          In his third amended petition, Dr. Ginsburg alleged that, beginning in 2001,
Chernoff had breached an oral contract with Susan when it failed to pay outstanding
commissions owed to her or to Global that, according to Chernoff’s financial records,
totaled $110,000. Dr. Ginsburg also alleged that Chernoff had been “unjustly
enriched by its wrongful conduct” in allegedly assisting Susan in her attempts to hide
community monies from him. Additionally, Dr. Ginsburg included claims for loss of
use and for exemplary damages.
          At the hearing on Chernoff’s motion to strike, Dr. Ginsburg acknowledged that
his third-party claims against Chernoff for breach of contract and unjust enrichment
were new causes of action asserted for the first time within seven days from the
hearing on the motion for summary judgment, but he argued that these claims did not
constitute surprise because they were based on the same operative facts as alleged in
his other third-party claims. Dr. Ginsburg also argued that loss-of-use damages are
subsumed within the calculation of actual damages on a claim for conversion and
that, in his second amended petition, he had previously sought recovery of exemplary
damages.
          With regard to Dr. Ginsburg’s claim for breach of contract, we note that this
claim was based on facts not previously alleged in any of Dr. Ginsburg’s pleadings. 
Whether such facts were known to Chernoff or not, Dr. Ginsburg’s amendment of his
petition to include such a claim would have materially altered the nature of the facts
in dispute, and we hold that the trial court did not abuse its discretion in striking this
claim, as well as Dr. Ginsburg’s equitable claim for unjust enrichment. Moreover,
as we have held above, the trial court did not err in rendering summary judgment on
Dr. Ginsburg’s conversion and fraud claims. Thus, to the extent that Dr. Ginsburg’s
third amended petition sought additional or new elements of damages on any of his
prior claims, we hold that the trial court did not abuse its discretion in striking such
elements of damages.
          Accordingly, we further hold that the trial court did not abuse its discretion in
granting Chernoff’s motion to strike Dr. Ginsburg’s third amended petition and to
deny Dr. Ginsburg leave to amend his pleadings and to add additional third-party
causes of action against Chernoff.
          We overrule Dr. Ginsburg’s second issue.
Conclusion
          We affirm the judgment of the trial court.
 

                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Keyes.