In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-065 CV


____________________



FRANK MORGAN, Appellant



V.



SHERRY MORGAN, Appellee






On Appeal from the 163rd District Court


Orange County, Texas


Trial Cause No. B-020286-D






MEMORANDUM OPINION


 Frank Morgan appeals the property division in a divorce decree. He contends the
trial court abused its discretion by awarding Sherry Morgan "more than 100%" of the
community estate and argues the evidence was legally and factually insufficient to support
the award. 

 The Family Code provides that a trial court "shall order a division of the estate of
the parties in a manner that the court deems just and right, having due regard for the rights
of each party. . . ." Tex. Fam. Code Ann. § 7.001 (Vernon 1998). Absent abuse of
discretion, the divorce court's division of a marital estate will not be disturbed on appeal. 
See Schlueter v. Schlueter, 975 S.W.2d 584, 588-89 (Tex. 1998); see also Loaiza v.
Loaiza, 130 S.W.3d 894, 900 (Tex. App.--Fort Worth 2004, no pet.)(sufficiency review
under abuse of discretion standard). 

 The division of the marital estate need not be equal, and the trial court may consider
many factors, including fraud on the community, in making the division. See Schlueter,
975 S.W.2d at 588-89 (fraud on the community and waste of community assets); Murff v.
Murff, 615 S.W.2d 696, 698-99 (Tex. 1981); Young v. Young, 609 S.W.2d 758, 761-62
(Tex. 1980). A disproportionate division must have a reasonable basis. Smith v. Smith,
143 S.W.3d 206, 214 (Tex. App.--Waco 2004, no pet.). If there is some evidence of a
substantive and probative character to support the decision, the trial court does not abuse
its discretion. In re Marriage of Jeffries, 144 S.W.3d 636, 640 (Tex. App.--Texarkana
2004, no pet.). 

 Frank and Sherry married in 1981 and divorced twenty-two years later. In 1979,
Frank and his brother, John Morgan, formed a corporation, purchased real property in the
corporation name, and erected on the property a prefabricated building where they
operated a paint and body business. Of the sixty payments made on the $22,000 purchase
money loan on the property, forty were made during marriage and twenty prior to 
marriage. During the marriage, a "paint booth" and carport were added to the property. 
Sherry indicated the cost of the carport was "maybe $50,000." And the value of the
property enhancements, she described as follows: "In my opinion, I'm not in the appraisal
or real estate, but I would say probably $100,000." Sherry's attorney agreed the business
property was Frank's separate property, but Sherry asked for reimbursement of community
funds paid on the note and reimbursement for the cost and value of the enhancements made
on the property during the marriage. 

 Frank says Sherry's testimony was speculation, because the opinion was couched
in equivocal language. We agree her speculation is not probative evidence of the actual
cost and value of the enhancements. See Porras v. Craig, 675 S.W.2d 503, 504-05 (Tex.
1984); Lefton v. Griffith, 136 S.W.3d 271, 277 (Tex. App.--San Antonio 2004, no pet.). 
This does not end our review of the record evidence, however.

 Frank acknowledged he did not tell the truth during his deposition when he said he
had not transferred community property during the marriage. At trial he admitted he
removed $32,000 from a savings account shortly before he and Sherry separated and put
the money in a cashier's check made out to his brother John. Frank said he owed his
brother a debt. Frank admitted he perjured himself when he earlier denied he had engaged
in adultery. When the adultery question arose at trial, Frank acknowledged he had an
affair with a woman who testified at trial, and then asserted the Fifth Amendment when
counsel asked about three other women. Frank acknowledged he was paying for the
woman's car during the marriage, and money from the business was used to pay rent on
her apartment and to buy her furniture. 

 The woman testified to various statements Frank made to her. She said Frank told
her he did not owe any debt to his brother, and he said he transferred the $32,000 to John 
so that the money would not be found. She testified Frank told her his sister was holding
$90,000 to $120,000 for him, and he had bought a $12,000 piece of property and put it
in her name. Frank also told her he had a "car hauler" that another person "was keeping
for him so that Sherry can't find it and claim it." She confirmed Frank bought her a car
for $2,500 and some bedroom furniture, and paid the rent on her apartment through his
business so that it would not appear he was the one actually paying for it. She said he
made sure his brother paid for the furniture out of the business funds so that Sherry could
not claim she owned an interest in the furniture. The girlfriend also testified Frank did not
want to appear as if he had money, and he did not want his wife to receive anything from
the marital estate. Frank did not want a paper trail. She testified that when Sherry
discovered the woman and Frank were living together Frank said he and the woman had
to break up because he did not want Sherry to "file adultery" on him. 

 Frank disputed much of this testimony, as well as Sherry's enhancement values. 
He denied he told his girlfriend his sister was holding money for him. He denied he gave
his sister $12,000 to purchase and hold property for him in her name so that Sherry would
not get part of it. He denied giving his brother large sums of money to hide trailers and
vehicles in his brother's name. He contended the value of the business property with
improvements was $44,520, the amount on the tax rolls. 

 Frank testified about other property he claimed should be included in the community
estate. He claimed Sherry and her mother owned a carpet/drapery store worth 
$1,000,000; he said Sherry "g[ot] a lot of money out of there." Sherry denied any
ownership interest in the shop and explained she took care of the shop's paperwork. Frank
also claimed an interest in property given Sherry by her father and certain property owned
by Sherry's grandmother. 

 Sherry acknowledges she asked the trial court to award her the majority of personal
property in the community estate, and the judgment reflects that award. The judgment also
reflects the trial court's finding of Frank's fraud on the community. There is sufficient
evidence of fraud on the community estate and wasting of its assets to support the court's
finding. That evidence includes transferring the $32,000 out of the savings account;
purchasing a $12,000 piece of real property during the marriage and placing it in his
sister's name; secreting $90,000 to $120,000 with his sister; purchasing property for his
girlfriend; and transferring vehicles to another person's name. 

 Appellant says the trial court awarded Sherry damages for fraud on the community
and then also gave Sherry a disproportionate share of the community estate. Although the
Supreme Court has held no cause of action exists in Texas to recover separate damages
when a wrongful act defrauds the community estate, the Court also said a trial court may
award a money judgment to one spouse against the other in order to achieve an equitable
division of the community estate when the estate has been defrauded. Schlueter, 975
S.W.2d at 588-89. The money judgment is used as a means for the wronged spouse to
recoup the value of his or her share of the community estate lost through the wrongdoing
spouse's actions. Id. Here, as part of the division of the marital estate, the trial judge
awarded Sherry a $78,500 judgment against Frank and ordered him to execute a
promissory note in that amount. The amount of the judgment is supported by evidence of
the value of lost or hidden community property. The trial court heard evidence Frank has
concealed more than that amount in community property. The money judgment was a
permissible way of achieving an equitable division of the community estate. See id. 

 Frank maintains the trial court awarded Sherry more than $180,000 and that the
$180,000 is more than 100% of the community estate. Disputing that dollar figure, Sherry
says the divorce judgment awarded her slightly more than $110,000, or somewhat less than
60% of the community estate. The divorce decree awards Sherry the $32,000 that Frank
had transferred out of the account; a $78,500 judgment; and certain personal and real
property. The judgment also awards Frank certain personal and real property. Though
Sherry acknowledges the award to her is more than half of the community estate, she
argues the trial court acted within its discretion. We agree. The record contains evidence
of a substantive and probative character to support the trial court's decision. The trial
court had "the opportunity to observe the parties on the witness stand, determine their
credibility, evaluate their needs and potentials, both social and economic." Murff, 615
S.W.2d at 700. We find no abuse of discretion in employing a money judgment to
equitably divide the loss of the community estate due to fraud. Appellant's issue is
overruled. The trial court's judgment is affirmed.

 AFFIRMED.


 _________________________________

 DAVID GAULTNEY

 Justice


Submitted on March 3, 2005

Opinion Delivered April 7, 2005


Before McKeithen, C.J., Gaultney and Horton, JJ.