Affirmed as Modified and Opinion filed November 20, 2007








Affirmed
as Modified and Opinion filed November 20, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00580-CV

_______________

 

ANGLO-DUTCH PETROLEUM INTERNATIONAL, INC.,

ANGLO-DUTCH (TENGE) LLC, and SCOTT VAN DYKE,
Appellants

 

V.

 

FOREST HUNTER SMITH, Appellee

                                                                                                                                               


On Appeal from the 133rd District Court

Harris County, Texas

Trial Court Cause No. 04-48332

                                                                                                                                               


 

O P I N I O N

 








Anglo-Dutch Petroleum International,
Inc., Anglo-Dutch (Tenge) LLC, and Scott Van Dyke appeal a judgment entered in
favor of Forest Hunter Smith on the grounds that: (1) the evidence is legally
and factually insufficient to support the trial court=s findings of fraud, conversion, and
breach of fiduciary duty; (2) any recovery for conversion or breach of
fiduciary duty is barred by the economic loss rule; (3) the agreement between
the parties was unenforceable because it violated usury and securities laws and
was against public policy; (4) the award of exemplary damages and attorney=s fees was an improper double
recovery; and (5) the trial court erred in failing to file additional findings
of fact and conclusions of law.  We affirm as modified.

Background

Van Dyke is the majority shareholder
in Anglo-Dutch Petroleum and Anglo-Dutch (Tenge) (collectively, AAnglo-Dutch@).  Van Dyke formed Anglo-Dutch for
the purpose of developing the Tenge oil and gas field in Kazakhastan.  In 1997,
Halliburton considered joining Anglo-Dutch in the exploration of the Tenge
field,  and entered into a letter of intent with Anglo-Dutch.  However, in
2000, Anglo-Dutch filed suit against Halliburton (the AHalliburton lawsuit@) over their dealings on this
project.

Needing money to finance the
Halliburton lawsuit and operate its business, Anglo-Dutch entered into several
Claims Investment Agreements (the AAgreements@) in which investors put up funds in
return for a portion of Anglo-Dutch=s recovery, if any, from the
Halliburton lawsuit.  Smith was one of these investors and signed two
Agreements in which he agreed to invest a total of $50,000.  From its cash
recovery in the Halliburton lawsuit, Anglo-Dutch was to pay Smith his initial
$50,000, eighty-five percent of $50,000, and then an additional eighty-five
percent for each year that passed from the date of the agreement to the time of
Anglo-Dutch=s recovery.

The trial of the Halliburton lawsuit
resulted in an award of $106 million to Anglo-Dutch, and Anglo-Dutch and
Halliburton subsequently entered into a confidential settlement agreement. 
However, before the settlement, Anglo-Dutch contacted its litigation investors,
seeking to negotiate a reduced payment on the Agreements.  Although some of the
investors agreed, others, including Smith, refused, and Smith filed this
lawsuit against Anglo-Dutch.  After a bench trial, the trial court: (1) entered
judgment awarding Smith actual damages of $151,876, exemplary damages of
$303,752, and attorney=s fees of $60,000; and (2) issued findings of fact and
conclusions of law, finding Anglo-Dutch and Van Dyke liable on Smith=s claims for fraud, breach of
fiduciary duty, conversion, and breach of contract.

 








                                                            Standard
of Review

A trial court=s findings of fact are reviewable for
legal and factual sufficiency of the evidence by the same standards as are
applied in reviewing the evidence supporting jury findings.  Catalina v.
Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).  In reviewing legal sufficiency,
we credit evidence favorable to the verdict if reasonable jurors could and
disregard evidence contrary to the verdict unless reasonable jurors could not. 
City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).[1]

Fraudulent Inducement

The trial court based its finding of
liability for fraud on its findings of fact that: (1) Van Dyke always considered
the funds advanced by investors to be loans; (2) Van Dyke represented the
transaction as a legitimate investment with risk; (3) Van Dyke did not disclose
to the investors, including Smith, his opinion and belief that the transaction
was a loan; (4) Van Dyke=s representation that the transaction was a legitimate
investment when he actually considered it to be a usurious loan was a false,
material representation that Van Dyke made with knowledge of its falsity and
with the intent that Smith rely on and act on the misrepresentation; (5) Smith
did not know that Van Dyke considered the monies that he advanced to
Anglo-Dutch to be loans; (6) Smith relied and acted on Van Dyke=s representation that Smith=s transaction with Anglo-Dutch was
not a loan but a legitimate investment and entered into the contracts.








Appellants= first issue challenges the legal and
factual insufficiency of the evidence  to prove fraudulent inducement, among
other things, on the ground that any representation that the Agreements were
investments rather than loans was not false,[2]
as reflected by the trial court=s findings of fact and conclusions of law.  We agree.  The
trial court=s findings and conclusions state that Anglo-Dutch solicited an investment
from Smith and that the Agreements were not loans or usurious loans, apparently
based on the finding that the Agreements contain no absolute obligation on the
part of Anglo-Dutch to repay any amount of money.  Therefore, any
representation that the transaction was an investment was not false and could
not support a finding of fraud.

Appellants also contend that the
trial court=s findings and conclusions do not support a finding of fraud liability
based on a theory that appellants made a false promise of future performance[3]
because that theory was not pleaded and the evidence is legally and factually
insufficient to support such a finding.  Although Smith=s brief does not appear to rely on
this theory, the trial court=s finding of fact number 48, referring to Van Dyke=s representation that the transaction
was a legitimate investment when he actually considered them to be usurious
loans, could be read to suggest such a theory.

Appellees have cited, and we have
found, no evidence that Van Dyke made any promise in the Agreements with an
intent not to perform.  Moreover, even if he believed at the time of entering
the Agreements that they would not be enforceable as loans due to usury
laws, he did not structure them as loans,[4]
and there is no evidence that he did not intend to pay the specified amounts as
returns on the investments.  Therefore, the trial court=s finding of liability for fraud is
not supported by the evidence, and appellant=s first issue is sustained

 

 

.








Conversion

Appellants= second issue challenges the finding
of liability for conversion, in part, on the ground that Smith sought only to
recover money, not a specific item of property.[5] 
Smith responds that his conversion claim sought a specific, identifiable sum of
money, and thus a property interest, rather than mere repayment of
indebtedness, because Smith had been assigned, and was seeking to recover, an
actual ownership interest in his proportionate share of the Halliburton
recovery.

We
disagree with Smith=s contention in this regard for two reasons.  First, the
assignment agreements on which he relies do not purport to convey an outright
ownership interest, but merely assign the interests in the recovery as
collateral security for payment of the obligations that are due under the
Agreements.  Second, and, more importantly, the trial court=s judgment does not award Smith=s conversion recovery out of any
specific or identifiable proceeds of the Halliburton settlement or otherwise,[6]
but simply awards a single actual damage amount against appellants for all of
the claims Smith asserted.  Therefore, we can find no basis to affirm an award
for conversion, and appellants= second issue is sustained.

Breach of
Fiduciary Duty

Appellants= third issue challenges the trial
court=s finding of liability for breach of
fiduciary duty, in part, on the ground that the evidence is legally and
factually insufficient to show that the necessary relationship of trust and
confidence existed between appellants and Smith.








A fiduciary relationship can be
either formal and informal.  A formal fiduciary relationship arises as a matter
of law in certain relationships, such as attorney-client, partnership, and
trustee relationships.  Meyer v. Cathey, 167 S.W.3d 327, 330 (Tex.
2005);  Insurance Co. of N. Am. v. Morris, 981 S.W.2d 667, 674 (Tex.
1998).  An informal fiduciary relationship can arise from a moral, social,
domestic or purely personal relationship of trust and confidence, but to impose
an informal fiduciary duty in a business transaction, the special relationship
of trust and confidence must exist prior to and apart from the agreement made
the basis of the suit.  Meyer, 167 S.W.3d at 331.  Not every
relationship involving a high degree of trust and confidence rises to a
fiduciary relationship.  Id. at 330.  Where, as here, the underlying
facts are undisputed, the determination of the existence of a fiduciary duty is
a question of law.  Id.

In this case, Smith contends that an
informal fiduciary relationship was created by the parties= execution of a confidentiality
agreement that prohibited disclosure of information regarding the Agreements
and required Smith to trust and rely upon appellants to protect the property
interests assigned to him because he could not disclose his interest to
Halliburton=s counsel, and any settlement proceeds would be paid to Anglo-Dutch or
their attorneys.  To the extent Smith=s position equates a confidentiality
agreement to a relationship of trust and confidence giving rise to a fiduciary
duty, he has cited, and we have found, no authority supporting the notion that
confidentiality agreements can create fiduciary relationships.  Similarly,
although every arms-length contractual arrangement entails a degree of trust
that the other parties will perform their obligations, few create fiduciary
duties.  Because Smith has cited and we have found no authority that would
support the existence of a fiduciary duty in the relationship that existed
between appellants and Smith, we sustain appellants= third issue.

Breach of Contract








Appellants= fourth issue challenges the finding
of liability for breach of contract on the grounds that: (1) the Agreements
were usurious loans, (2) alternatively, if the Agreements were not loans, they
were void, unregistered securities, and (3) the Agreements were unenforceable
because they violated public policy.  In Haskell, the First Court of
Appeals addressed these same challenges that Anglo-Dutch asserted in a case
against another investor.  See Anglo-Dutch Petroleum Int=l, Inc. v. Haskell, 193 S.W.3d 87 (Tex. 2006).  The opinion
in that case concluded that: (1) the agreements did not meet the definition of
a Aloan@ and were thus not usurious
transactions;[7] (2) even if
the investment agreements could be considered securities, appellants, as
sellers rather than purchasers of the securities, have no standing to bring a
claim based on the securities being unregistered;[8]
and (3) the agreements did not violate public policy because they did not vest
control over the litigation in uninterested third parties.  Id. at 103B05.  Although we are not bound by
that decision of the First Court, this court has elected to follow it,[9]
and we do so again in this case.[10] 
Accordingly, appellants= fourth issue is overruled.

Remaining Issues

Appellants= fifth and sixth issues challenge the
award of exemplary damages as: (1) being an improper double recovery with the
award of attorney=s fees; and (2) improperly imposing exemplary damages
collectively against appellants without making specific findings with respect
to each defendant.  Appellants seventh issue contends the trial court erred in
not making additional findings of fact on Smith=s claims for conversion, breach of
contract, and exemplary damages.  However, because our sustaining of appellants= first three issues requires reversal
of the award of exemplary damages[11] and render
appellants= complaint on the findings of fact immaterial, we need not address the
fifth, sixth, or seventh issues.








Therefore, we reverse the portion of
the trial court=s judgment awarding exemplary damages, render judgment that
Smith take nothing on his claim for exemplary damages, and affirm the remainder
of the judgment.

 

 

/s/        Richard H. Edelman

Senior Justice

 

Judgment rendered and Opinion filed
November 20, 2007.

Panel consists of Chief Justice
Hedges and Justices Fowler and Edelman.*









[1]           Because appellants= factual sufficiency challenges do not affect our
disposition, we do not recite the factual sufficiency standard of review.





[2]           See, e.g., In re FirstMerit Bank, N.A.,
52 S.W.3d 749, 758 (Tex. 2001) (reciting elements of fraud, including the
making of a false representation).





[3]           A promise of future performance constitutes
an actionable misrepresentation if the promise was made with no intention of
performing at the time it was made.  Formosa Plastics Corp. v. Presidio
Engineers & Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998).  However,
to support such a misrepresentation, evidence must be relevant to the defendant=s intent at the time the misrepresentation was made.  Id.





[4]           Nor does it logically follow that a belief
that an agreement is unenforceable equates to an intent not to perform it.





[5]           See, e.g., Exxon Mobil Corp. v. Kinder
Morgan Operating L.P., 192 S.W.3d 120, 128 (Tex. App.BHouston [14th Dist.] 2006, no pet. h.).





[6]           Although the trial court found that
appellants exercised dominion over a specific and identifiable sum of money
belonging to Smith, it did not identify that sum other than by amount.





[7]           Id. at 95B101.





[8]           Id. at 103.





[9]           See Anglo-Dutch Petroleum Int=l, Inc. v. Littlemill Ltd., No. 14-06-00921-CV, 2007 WL 2826900 at * 2-3 (Tex.
App.CHouston [14th Dist.] Oct. 2, 2007, no pet. h.).





[10]          Although the trial court found that
appellants were collaterally estopped from asserting these claims by the
decision in Haskell, we need not address that issue.





[11]          See, e.g., Schlueter v. Schlueter,
975 S.W.2d 584, 589 (Tex. 1998) (noting that recovery of punitive damages
requires a finding of an independent tort with accompanying actual damages).





*           Senior Justice Richard H. Edelman sitting
by assignment.