W. L. SMYTHE ET AL. V. HARRY COCHRAN ET AL.

No. 5215. Decided March 20, 1929.
(14 S. W., 2d Series, 821.)

J. F. *Hair* and *Joe L. Hill,* for appellants.

Plaintiffs had contractual and vested rights in all the funds in the hands of the trustees at the time the Belton bank was declared insolvent, that had been paid into the depositors' guaranty fund by contributing banks prior to February 7, 1925. Cooley Const. Lim., p. 342–345, 7th Edition; Dartmouth College v. Woodward, 4 Wheat. U. S., 518–694, 695.

The depositors' guaranty fund is a guaranty and trust fund and all holders of unsecured, non-interest bearing deposits, which deposits have been duly approved and allowed by the Banking Commissioner, have contractual and vested rights in all moneys in the hands of the trustees of the depositors' guaranty fund, that are then in the hands of said trustees, which had heretofore been paid into said fund by any contributing bank. Cooley on Const. Limitation, p. 544–45, Third Ed., 369–71.

Contributing banks to the depositors' guaranty fund who permit their pro rata share, if they had such a pro rata share, to remain in said fund and also during said time, without actual or constructive notice to unsecured, non-interest bearing depositors, permit them to make such deposits in a member bank and the member bank in which they make such deposits is declared insolvent and taken charge of by the Banking Commissioner, and their protected claims are duly approved by the Banking Commissioner, then such contributing banks are estopped from withdrawing their pro rata share, if such right they had to do so, until all such protected depositors' claims are paid in full. Nye v. Hawkins, 65 Texas, 603; 3 Freeman on Judgments, Sec. 1356, Note 1; State of Kansas v. Kansas City, 204 Pac. 690; Board of Education v. Van Zant, 195 N. Y. Supp., 297; N. W. Grain Dealers Assn. v. Hyndman, 31 Manitoba, L. R., 302, 61 D. L. R. 548 (Note 18 A. L. R., 84).

The fund created to build up the depositors' guaranty system and to give confidence to the public, as provided by the depositors' guaranty law prior to February 7, 1925, cannot be changed by the Legislature to the injury of those who have acted upon the assurance that the depositors would be protected.

All creditors of a trust fund, which has ceased to operate as a going trust fund and is in litigation, are entitled to be paid in full

before any of the funds can be refunded to contributors of said trust fund.  39 Cyc., p. 437.

No State Bank shall be permitted to withdraw its interest in the guaranty fund until all lawful demands against such interest, existing on February 7, 1927, have been fully satisfied and discharged. Acts of 1927, p. 19, which reads as follows:  "Nor shall any State Bank be permitted to withdraw its interest in the guaranty fund until all lawful demands against such interest, existing at the time this Act takes effect, have been fully satisfied and discharged." 39 Cyc., p. 437.

*Claude Pollard,* Attorney-General, and *C. W. Truehart* and *L. C. Sutton,* Assistants, for appellees.

In reference to claims against the guaranty fund the district court has jurisdiction only to adjudicate particular claims to be payable out of the guaranty fund, and has no jurisdiction to require the Banking Board or the Banking Commissioner to pay depositors a sufficient amount out of the guaranty fund to fully satisfy their claims, and therefore the district court would have no basis for a declaratory judgment adjudicating that certain moneys are available as a part of the guaranty fund.  33 Corpus Juris, 1097; Article 1735, R. S., 1925; Innes v. State Banking Board, 113 Texas, 300; Kidder v. Hall, 113 Texas, 49; Middlekoff v. State Banking Board, 111 Texas, 561; Kinney v. Channel State Bank, 288 S. W., 590; Herring v. Bank, 113 Texas, 264; McFall v. State Board of Education, 101 Texas, 572.

A claim against the guaranty fund cannot be established upon allegations of actual insolvency of a bank several years prior to the time the Banking Commissioner declared the bank to be insolvent and took it over for liquidation purposes, since the law provides that depositors shall be paid out of the guaranty fund if the Banking Commissioner takes possession of the bank, and since the Banking Commissioner is by law vested with full discretion in determining the solvency or insolvency of a State bank for the purpose of taking possession of same.  R. S. 1925, Article 369; Pool v. Chapman, 283 S. W., 762; Sanders State Bank v. Hawkins, 142 S. W., 84; Austin v. Duffer, 279 S. W., 318, 323, 324; Markus v. Austin, 284 S. W., 326; Deatsch v. Fairfield, 233 Pac. (Ariz.) 887; Austin v. State Bank of Copperas Cove, 300 S. W., 129.

Protected depositors of a bank operating under the guaranty fund plan are entitled to payment out of the guaranty fund only

if and when the Banking Commissioner takes possession of such bank and not simply when such bank becomes insolvent.

MR. JUDGE SPEER delivered the opinion of the Commission of Appeals, Section B.

This case is before us upon certified question from the Third Supreme Judicial District, as follows:

"The above cause is pending in this court on appeal from the district court of Bell County. The questions herein certified are material to a decision of the appeal, arise upon the action of the trial court in sustaining demurrers to plaintiffs' (appellants') second amended original petition and in dismissing the cause upon refusal to amend, and therefore grow out of the nature and result of the suit and the facts disclosed by the record before us; which in so far as deemed material to this certificate, follow:

"The amended petition in question is somewhat prolix and involved, and not altogether clear in some respects in its statement of the facts relied upon as basis for the relief sought. As we interpret the petition the controlling facts alleged follow:

"Appellants both before and after February 7, 1925, held unsecured non-interest bearing deposits in the First State Bank of Belton (a guaranty fund bank), which bank was on January 7, 1927, closed and taken charge of by the State Banking Commissioner. Appellants' claims were duly allowed by the Banking Commissioner as entitled to participation in the guaranty fund. Under the state banking law as it existed prior to February 7, 1925, the date when Chap. 9 of the General Laws of the Regular Session of the 39th Legislature (1925) became effective, there was no provision whereby a bank might change its method of protecting its depositors from the guaranty fund system to the bond security system. That act, however, authorized such change and under it, the petition alleges, a large number of banks operating under the guaranty fund system changed to the bond security system, and there remains in the treasury a large sum of money (some two million dollars as we interpret the petition) to which the banks so changing their methods would be entitled if their action in so doing legally gave them that right. The petition alleges:

" 'That continuously for a period of about five years, prior to January 7th, 1927, the said First State Bank of Belton, was in fact insolvent and that at all times its condition was such that the permitting of it to continue in business jeopardized the financial safety

of its depositors and creditors, and that during each and all of said times, the State Banking Commissioner of Texas, knew or by the exercise of due and ordinary diligence could have known that the said First State Bank of Belton was insolvent, and that the business was in such condition that to permit it to continue in business would jeopardize the financial safety of its depositors and creditors.'

"The relief prayed for by appellants (aside from having their claims established as protected depositors of the Belton bank, relief to which they are not entitled because the petition shows that their claims have already been allowed as secured by the guaranty fund) is 'that said trust fund in the hands of the State Banking Board, as alleged by plaintiffs be declared a trust fund, for the use and benefit of plaintiffs, and that the status of said guaranty and trust fund be judicially determined by a decree of this court; that the amount of the claims of each plaintiff herein be decreed to be paid out of such guaranty and trust fund in due course of the administration of the same.'

"Appellants contend that all deposits in the treasury to the credit of the guaranty fund on February 7, 1925, constituted a trust fund for the benefit of all then secured depositors in banks that thereafter might become insolvent, no part of which deposits could be withdrawn or diverted to any other purpose; and that as to such depositors,—that is depositors on and prior to February 7, 1925, said act in so far as it attempted to authorize withdrawal through the method of change from the guaranty fund plan to the bond security plan was unconstitutional and void as being (1) an attempt to destroy vested rights and (2) retroactive in effect. The petition in substance alleges in this regard that practically all of the solvent banks operating under the guaranty fund method on February 7, 1925, have subsequently thereto changed to the bond security plan; that banks remaining under the guaranty fund plan have become insolvent and have been taken over by the Banking Commissioner, and that the guaranty fund is wholly insolvent, unless the amount still in the treasury which was contributed prior to February 7, 1925, by banks changing to the bond security system be resorted to. This contention is based in the main upon the following language of Art. 444, R. S. 1925, 'Said fund shall never be diverted from the purpose specified in this chapter, nor shall it ever be considered state funds.'

"The provision of the act repealing the guaranty fund law (chap. 12, General Laws, Regular Session 40th Legislature), that it shall

not affect or impair any right vested or accrued, is also relied upon by appellants in this connection.

"The further contention is made that appellants have a vested right in the guaranty fund on deposit on February 7, 1925, by virtue of their allegations of actual insolvency of the Belton bank.

"The petition discloses two issues of fact for determination in adjudicating the questions presented, namely: First, whether appellants' claims represent deposits made prior to February 7, 1925; and, second, whether the Belton Bank was insolvent as alleged prior to that date. But for these fact issues, we are of the view that all questions presented for adjudication can properly be determined in a mandamus proceeding in the Supreme Court, and that but for these fact issues the district court would be without jurisdiction.

"Because of the public importance of the controversy thus raised, and the evident necessity of having a judicial determination thereof by the Supreme Court as soon as practicable, and because we are advised that the Supreme Court now has before it mandamus proceedings seeking a distribution of the entire guaranty fund, we deem it advisable to certify for your decision the following questions:

"1. Is that portion of the guaranty fund still in the treasury which was contributed prior to February 7, 1925, by banks that have subsequently (but prior to January 7, 1927, when the Belton bank was closed by the Commissioner) changed from the guaranty fund system to the bond security system, a trust fund for the benefit of all secured depositors whose deposits antedate the act of February 7, 1925, in the sense that such fund could not be withdrawn by change of plan under the act of February 7, 1925? In other words, have appellants as holders of secured deposits in the Belton bank antedating February 7, 1925, a vested right in the entire fund in the treasury on that date, which vested right could not be affected or impaired by the act of February 7, 1925?

"2. If Question 1 is answered in the negative, then did the fact of actual insolvency of the Belton bank prior to February 7, 1925, create in appellants, as secured depositors prior to that date, such vested right?"

The questions certified are answered in the decisions of Lacy v. State Banking Board, 118 Texas, 91, 11 S. W. (2d) 496, and Lydick v. State Banking Board, 118 Texas, 168, 11 S. W. (2d) 505. The opinion of Presiding Judge Harvey on rehearing in the Lydick case (Tex. Com. App.), 12 S. W. (2d) 954, which has been

written since the above certificate was made, renders it unnecessary for us to discuss the questions and we merely recommend that both questions be answered "No."

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

*C. M. Cureton,* Chief Justice.