In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00569-CV
_____


IN THE ESTATE OF DONNA FELLS

_____

**On Appeal from the County Court at Law No. 1**
**Jefferson County, Texas**
**Trial Cause No. 86109**

_____

**MEMORANDUM OPINION**

This is an appeal from the trial court's take-nothing judgment following a bench trial in a suit by Daniel Fells Jr. ("Fells Jr."), individually and as independent executor of his father Daniel Fells Sr.'s ("Fells Sr.") estate, against Margy O'Rourke ("O'Rourke"), individually and as independent executrix of Donna Fells's estate. Fells Jr. raises two appellate issues for our consideration. We affirm the trial court's judgment.

BACKGROUND

Donna Fells ("Donna") and Fells Sr. were married at the time of Donna's death. This case began as an application by Fells Sr. for temporary restraining

1

order and temporary injunction against his step-daughter O'Rourke, individually and in her capacity as independent executrix of Donna's estate. Fells Jr. substituted as the plaintiff after the death of Fells Sr., and he sued O'Rourke, individually and in her capacity as independent executrix of Donna's estate, for fraud by nondisclosure, breach of fiduciary duty, and conversion. Specifically, Fells Jr. contended that a few weeks prior to Donna's death, Donna and O'Rourke transferred $83,085.90 from community-property bank accounts into O'Rourke's account, and that O'Rourke withdrew $13,015.26. Fells Jr. also asserted that Donna and O'Rourke "deceived" Fells Sr. into signing real property located at 1901 Nall Street (the "residence") over to O'Rourke, and that O'Rourke redeemed certificates of deposit belonging to Fells Sr. and Donna in the amounts of $14,981.49 and $19,947.55.

Fells Jr. further contended that a few weeks before her death, Donna made a new will in which she disinherited Fells Sr. and designated different beneficiaries of her estate. Fells Jr. alleged that both Donna and O'Rourke had a fiduciary relationship with Fells Sr., and that Fells Sr. was unaware that Donna and O'Rourke had taken all of the money from the joint accounts and deposited the money into O'Rourke's account. According to Fells Jr., O'Rourke and Donna intended to induce Fells Sr. to sign over his residence to O'Rourke by failing to disclose material facts. Fells Jr. also asserted a claim for conversion for

2

O'Rourke's failure to remit rental payments allegedly owing to Fells Jr. on property located at 218 Nederland Avenue (the "rental property") that Fells Jr. jointly owned with O'Rourke and Fells Sr.

At the bench trial on the merits,[1] O'Rourke testified that she is Donna's daughter, and she helped Donna care for Fells Sr. after his health declined. O'Rourke testified that at one point, she took Donna to an attorney to sign some documents. According to O'Rourke, Donna did not inform O'Rourke of the reason for the visit to the attorney, and O'Rourke waited outside the attorney's office while Donna was inside the office with the doors closed. According to O'Rourke, when Donna came out of her attorney's office, Donna handed O'Rourke a will and instructed O'Rourke not to open it until her death. Donna's new will was executed on June 9, 2003. O'Rourke testified that she frequently spoke to Fells Sr., and she testified that Fells Sr. never told her he was going to give her power of attorney.

---

[1]O'Rourke filed a motion for summary judgment, and the trial court declined to rule on the motion prior to trial and instead carried it "with the case" at trial. In its final judgment after trial, the trial court did not rule on the motion for summary judgment, but instead signed a judgment stating that Fells Jr. had failed to prove one or more essential elements of his claims by a preponderance of the evidence and rendered a take-nothing judgment in favor of O'Rourke on Fells Jr.'s claims for fraud and breach of fiduciary duty. In its judgment, the trial court expressly stated that the Court "does not adjudicate the merits of any claim for conversion that [Fells Jr.] may have." Upon submission of this appeal, we remanded the case to the trial court for further action and clarification of its judgment, and the trial court severed the claims for conversion and partition and granted a new trial as to those claims.

O'Rourke testified, "I wasn't informed of that until they had already decided." O'Rourke testified that she believes Donna told her that Fells Sr. wanted O'Rourke to have his power of attorney.

Later in the trial, O'Rourke testified that Fells Sr. asked her to accept his power of attorney, and she did not want to do so, but he told her that he and Donna had discussed it. Fells Sr. gave O'Rourke power of attorney and gave her a copy of the document, which was executed on June 12, 2003. O'Rourke testified that she never took any action under the power of attorney. According to O'Rourke, the deed of the residence and the transfers of funds from the bank accounts occurred before Fells Sr. executed the power of attorney. Fells Sr. revoked the power of attorney on July 31, 2003.

O'Rourke explained that she, Fells Sr., and Fells Jr. jointly owned the rental property. O'Rourke testified that she collected the rent after Hurricane Rita. O'Rourke spent some of the rental income on repairs and upkeep on the building, and she explained that the building "took quite a hit during the hurricane[,]" and that a fire also occurred. O'Rourke testified that the rent was $800 per month, and that "expenses and stuff" had to be paid out of the rental income.

O'Rourke testified that upon Donna's instructions, O'Rourke withdrew the funds from some of the accounts owned by Donna and Fells Sr. O'Rourke explained that Donna called the bank and informed the bank that she was sending

4

O'Rourke. According to O'Rourke, Donna put $12,000 in cash into the dresser. O'Rourke explained that Donna wanted her to use the money to care for Fells Sr., and that Donna had a conversation with Fells Sr. about the money. O'Rourke testified that the money that she eventually put into her own account was to be used to "[t]ake care of everything[,]" and O'Rourke also paid for Donna's funeral from those funds. According to O'Rourke, Donna also believed that her will would be contested, and the money was also to be used for those proceedings. O'Rourke testified that she did not have any of the money left that she withdrew from the banks, and that "[t]he rent money has been put back into the building."

O'Rourke denied being involved in conversations about Fells Sr. signing a deed to his residence over to O'Rourke. O'Rourke testified that she was not present when Donna and Fells Sr. signed a deed transferring the residence to her. The deed was executed on June 12, 2003. O'Rourke explained that she did not speak to Fells Sr. about the deed to her of the residence before it was executed, and she never asked him to sign it. O'Rourke testified that Donna directed her to allow Fells Sr. to live in the home until his death. According to O'Rourke, the source of the funds originally used by Donna and Fells Sr. to purchase the residence were "100 percent" from money that belonged to Donna and Donna's deceased previous husband, O'Rourke's biological father. O'Rourke also testified that she was not

5

privy to the conversation between Donna and Fells Sr. about Donna's changes to her will.

Fells Jr. testified that he is executor of Fells Sr.'s estate. Fells Jr. explained that he jointly owned the rental properly with his wife, Fells Sr., and Donna. Fells Jr. testified that O'Rourke began collecting the rent upon Donna's death, and that he had not received any rent from O'Rourke since O'Rourke began collecting it. Fells Jr. testified that Fells Sr. found out from Donna's son Benny Hudgins that he had been "cleaned out" a few days after Donna's funeral, and Fells Jr. has continued to investigate how much money remained in the community estate of Fells Sr. and Donna.

Fells Jr. explained that he took Fells Sr. to the credit union, and they learned that "they had taken everything there except what was under Dan D. Fells[] Enterprises, which was a joint account for the rent." Fells Jr. testified that his father wanted to disburse that account, which he testified contained fourteen or fifteen thousand dollars, so his father put half of the amount into his own account and half into Fells Jr.'s account. Fells Jr. then took his father to Community Bank, and he testified that "everything was pretty well taken out except for a 20,000-dollar CD." Fells Jr. explained that a woman at the bank told him that the account "was cleaned out by his wife . . . when Margy O'Rourke brought her by there."

According to Fells Jr., Fells Sr. and Donna worked together in Fells Sr.'s business, Lone Star Insulation, but had sold the business by the time of Donna's death, with the exception of some real property, which included the rental property. Fells Jr. testified that Fells Sr. filed a lawsuit shortly thereafter.

O'Rourke's brother Benny Hudgins testified that he told Fells Sr. that Donna and O'Rourke had taken the money because he "didn't think it was right for them to take his money. . . . He was laying in his bed. He didn't know what was going on. And so, I felt like it was only fair and the right thing to do, was to tell him what happened." According to Hudgins, upon hearing the news, Fells Sr. "was to a point of emotional crying and . . . he didn't believe me." Hudgins testified that Donna told him "they had taken the money and they had put it where nobody else could find it." Hudgins testified that he contested Donna's will "at first[,]" but decided not to pursue it due to the expense of the legal process and the time involved. According to Hudgins, O'Rourke offered him $50,000 to settle, but O'Rourke ended the telephone conversation when Hudgins asked the source of the settlement funds. Hudgins testified that O'Rourke has not contacted him in many years, and she never gave him any money from Donna's estate. Fells Jr. rested at the conclusion of Hudgins's testimony.

The trial court signed a judgment in favor of O'Rourke "on all claims for fraud and breach of fiduciary duty alleged by Plaintiff[]" and ordered that Fells Jr.

7

take nothing. In its findings of fact and conclusions of law, the trial court found, in pertinent part, that (1) Donna changed the beneficiaries of her will without Fells Sr.'s knowledge, (2) the residence was community property, (3) Fells Sr. transferred his interest in the residence to O'Rourke, (4) "[t]here is no direct evidence of any inducement, fraudulent or otherwise[,] to explain the motivation for the transfer of [Fells Sr.'s] interest in the [residence,] " (5) the evidence does not establish that if Fells Sr. had been aware that Donna had changed the beneficiaries of her will, he would not have agreed to deed the residence to O'Rourke, (6) Donna had no duty to inform Fells Sr. of her decision to change her will, (7) "[t]he evidence did not establish what representations may have been made to Daniel Fells, Sr., or that those representations were false, or that he relied on those representations as an inducement to transfer his interest in the [residence,]" (8) Fells Jr. failed to establish a fraud claim, (9) O'Rourke held Fells Sr.'s power of attorney "for a very brief few weeks," (10) O'Rourke never exercised any right under the power of attorney, (11) the evidence did not show that O'Rourke breached obligations to Fells Sr. under the power of attorney, (12) the law does not recognize a common-law fiduciary relationship based on Fells Sr.'s marriage to Donna and familial relationship with O'Rourke, (13) the community assets are subject to the control of either spouse "subject to a determination and division of assets on dissolution of the community through

8

divorce[,]" and (14) Texas law does not recognize Fells Jr.'s claims based on common-law fiduciary duty allegedly arising from familial relationships.

ISSUE ONE

In his first issue, Fells Jr. contends the trial court erred by granting a take-nothing judgment against him in favor of O'Rourke. As sub-issues, Fells Jr. argues that the trial court erred by (1) ruling on the elements of common-law fraud as opposed to fraud by nondisclosure, (2) ruling that the evidence did not establish whether Fells Sr. knew of the transactions at Texas U.S. Credit Union and Community Bank, (3) ruling that spouses do not have a fiduciary relationship with each other, (4) placing the burden of proof on Fells Jr. rather than "the fiduciaries[,]" (5) ruling that O'Rourke had no fiduciary duty under the power of attorney from Fells Sr., and (6) ruling that there is no cause of action against a third party when there has been a fraud on the community.

Findings of fact in a bench trial have the same force and dignity as a jury's verdict. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). "We apply the same standards in reviewing the legal and factual sufficiency of the evidence supporting the trial court's fact findings as we do when reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a jury question." *Rich v. Olah*, 274 S.W.3d 878, 883 (Tex. App.—Dallas 2008, no pet.). In reviewing the legal sufficiency of the evidence, we review the evidence in the light

9

most favorable to the jury's verdict, crediting evidence favorable to that party if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In reviewing the factual sufficiency of the evidence, we weigh all of the evidence and will set aside the judgment only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* at 826; *see also Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). To set aside the judgment on factual sufficiency grounds, we must be able to detail the evidence relevant to the particular issue and then state how the contrary evidence greatly outweighs the evidence that supports the judgment. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam).

In a bench trial, the trial court acts as the fact finder, is the sole judge of the weight and credibility of the evidence, and is entitled to resolve any conflicts in the evidence and to choose which testimony and witnesses to believe. *City of Keller*, 168 S.W.3d at 819; *see also Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *HTS Servs., Inc. v. Hallwood Realty Partners, L.P.*, 190 S.W.3d 108, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.). The fact finder may choose to believe one witness over another, and we may not substitute our judgment for that of the fact finder. *Golden Eagle Archery*, 116 S.W.3d at 761;

*Figueroa v. Davis*, 318 S.W.3d 53, 60 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

The elements of common-law fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker made the representation with intent that the other party should act upon it; (5) the party relied on the representation; and (6) the party suffered injury. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). The elements of fraud by nondisclosure are: (1) the defendant failed to disclose facts to the plaintiff, (2) the defendant had a duty to disclose those facts, (3) the facts were material, (4) the defendant knew the plaintiff was ignorant of the facts and did not have an equal opportunity to discover the facts, (5) the defendant was deliberately silent when she had a duty to speak, (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, (7) the plaintiff relied on the defendant's nondisclosure, and (8) the plaintiff suffered injury as a result of acting without that knowledge. *Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 850 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary relationship between the plaintiff and the defendant, (2) the defendant

11

breached her fiduciary duties arising from that relationship, and (3) the plaintiff was injured or the defendant benefited as a result of the breach. *Plotkin v. Joekel*, 304 S.W.3d 455, 479 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

In this case, Fells Jr.'s pleadings allege a cause of action for fraud by nondisclosure rather than common law fraud. The evidence adduced at trial did not establish that O'Rourke had a duty to disclose the facts to Fells Sr. Although the evidence showed that the deed to the residence and the power of attorney were executed on the same day, the evidence did not establish which was executed first, nor did it establish that O'Rourke ever acted pursuant to the power of attorney.

In addition, the evidence failed to establish the existence of an informal fiduciary relationship between O'Rourke and Fells Sr. To prove a confidential or informal fiduciary relationship, a party must show that a special relationship of trust and confidence existed prior to, and apart from, any purported agreement made the basis of the suit. *See Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997). Such a relationship must be mutual and understood as such by both parties. *Swinehart v. Stubbeman, McRae, Sealy, Laughlin & Browder, Inc.*, 48 S.W.3d 865, 882 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). A family relationship is considered as a factor, but it does not, by itself, establish a fiduciary relationship. *See Tex. Bank and Trust Co. v. Moore*, 595

12

S.W.2d 502, 508 (Tex. 1980). Although the trial court applied the incorrect elements of the type of fraud cause of action pleaded by Fells Jr., the trial court nevertheless reached the correct conclusion, since the evidence did not establish that O'Rourke breached her fiduciary duty pursuant to the power of attorney or that O'Rourke had an informal fiduciary relationship with Fells Sr. prior to the execution of the power of attorney. We must affirm a judgment if it can be upheld on any legal theory, even if the trial court gives an incorrect reason for its judgment. *Guar. Cnty. Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647, 648 (Tex. 1986).

Contrary to Fells Jr.'s argument, the trial court did not rule that O'Rourke had no fiduciary duty under the power of attorney. Rather, the trial court concluded that O'Rourke briefly held Fells Sr.'s power of attorney, but that she never exercised any right under the power of attorney, and the evidence did not demonstrate that she breached the obligations she owed to Fells Sr. pursuant to the power of attorney. The evidence adduced at trial supports the trial court's conclusions. Because Fells Jr. failed to establish the existence of a fiduciary relationship between O'Rourke and Fells Sr., the burden of proof never shifted to O'Rourke. *See Gaynier v. Ginsberg*, 715 S.W.2d 749, 754 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (If the plaintiff can establish the existence of a fiduciary relationship, then the burden shifts to the fiduciary to prove that the transactions were fair.).

We now turn to the sub-issue in which Fells Jr. asserts that the trial court erred by ruling that the evidence did not establish whether Fells Sr. knew of the transactions at Texas U.S. Credit Union and Community Bank. As previously discussed, O'Rourke testified that Donna had a conversation with Fells Sr. about the transactions, while Hudgins testified that when he told Fells Sr. about the transactions, Fells Sr. became emotional and did not believe Hudgins. As fact finder, the trial court was the sole judge of the weight and credibility of the evidence and was entitled to resolve any conflicts in the evidence and to choose which testimony and witnesses to believe. *See City of Keller*, 168 S.W.3d at 819; *see also Golden Eagle Archery*, 116 S.W.3d at 761; *HTS Servs.*, 190 S.W.3d at 111. Weighing all of the record evidence, we cannot say that the contrary evidence greatly outweighs the evidence that supports the trial court's findings and judgment. *See Dow Chem. Co.*, 46 S.W.3d at 242.

We turn now to the sub-issues in which Fells Jr. argues that the trial court erred in ruling that spouses do not have a fiduciary relationship with each other and that the trial court erred by ruling that community assets are subject to determination and division upon divorce, and no cause of action lies against a third party for fraud on the community. Fells Jr. correctly points out that under established Texas law, spouses have a fiduciary relationship to each other as to community property controlled by each spouse. *In re Marriage of Moore*, 890

14

S.W.2d 821, 827 (Tex. App.—Amarillo 1994, no writ). Hence, the trial court erred by concluding that a fiduciary relationship did not exist between Donna and Fells Sr. However, we may not reverse the trial court's judgment on the ground that the trial court made an error of law unless we conclude that the complained-of error probably caused the rendition of an improper judgment. Tex. R. App. P. 44.1(a)(1).

"[N]o independent cause of action exists in Texas to recover separate damages when the wrongful act defrauded the community estate." *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998). Therefore, although the trial court erred by finding that no fiduciary relationship existed between Fells Sr. and Donna, the trial court's error was harmless because no cause of action exists against Donna for the alleged breach of the fiduciary relationship. *See id*. Furthermore, we have already determined that the trial court did not err by concluding that Fells Jr. had failed to prove his fraud cause of action against O'Rourke. Accordingly, assuming without deciding that the trial court erred by concluding that there is no cause of action against a third party for fraud on the community, any such error was harmless because Fells Jr. did not prove fraud by O'Rourke.

## ISSUE TWO

In his second issue, Fells Jr. argues that the trial court erred by ruling that his conversion claim did not "give fair notice of a claim for partitioning the property and for an accounting of the rental revenues." As previously discussed, after the

15

appeal was submitted and this Court questioned its jurisdiction and remanded the case to the trial court for clarification of the finality of its judgment, the trial court signed an order severing Fells Jr.'s claim for conversion and granted a new trial on that issue, as well as Fells Jr.'s claim for partition of the rental property. When a motion for new trial is granted, the case is reinstated upon the docket of the trial court and will stand for trial the same as though no trial had been had. *Wilkins v. Methodist Health Care Sys.*, 160 S.W.3d 559, 563 (Tex. 2005). Therefore, when the trial court grants a motion for new trial, the trial court "essentially wipes the slate clean and starts over." *Id.* Therefore, issue two is not before the Court at this time. For the reasons stated above, we overrule issues one and two and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on June 28, 2013
Opinion Delivered October 24, 2013
Before McKeithen, C.J., Gaultney and Kreger, JJ.

**DISSENTING OPINION**

I respectfully dissent from the Court's ruling on the community property bank accounts. Because she was the donee of some of the community property of the marriage, O'Rourke was sued in her individual capacity, and in her capacity as representative of the estate of Donna Fells. Death, not divorce, ended the marriage of Donna Fells and Daniel Fells Sr. For breach of a fiduciary duty resulting in deprivation of one-half of the community assets, a wronged spouse has the same two remedies against the estate as does a wronged spouse in a divorce action. *See Carnes v. Meador*, 533 S.W.2d 365, 370-71 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.). While the spouse has no independent cause of action to recover separate damages, he can (1) rescind the transfer of assets, or (2) obtain a damage assessment limited to the value of property transferred. *See Chu v. Hong*, 249 S.W.3d 441, 446 (Tex. 2008) (citing *Schlueter v. Schlueter*, 975 S.W.2d 584, 588 (Tex. 1998)). If the share of remaining community funds in the estate is insufficient, he may recover the property from the funds in the donee's hands in appropriate circumstances. *See Carnes*, 533 S.W.2d at 371.

The constructive-fraud claim that underlies those two remedies arises from a breach of the fiduciary duty one spouse owes the other. *See Boyo v. Boyo*, 196 S.W.3d 409, 420 (Tex. App.—Beaumont 2006, no pet.); *Loaiza v. Loaiza*, 130 S.W.3d 894, 900-01 (Tex. App.—Fort Worth 2004, no pet.). A presumption of

17

constructive fraud arises when a spouse breaches the fiduciary duty and disposes of the other spouse's one-half interest in community property without the other's knowledge or consent. *Id.* at 901. The burden of proof is on the disposing spouse to show fairness in disposing of the community property. *Id*. In this case, O'Rourke, the representative of the estate and also the donee, should be required to show the fairness of the transactions.

In his letter explaining his rulings after the trial, the judge initially stated:

> The evidence established the existence of substantial assets held in joint banking accounts subject to the order of Donna or Fells, Sr. Those accounts were transferred by Donna to accounts subject to the demand of Donna or Margy with rights of survivorship without the knowledge or consent of Fells, Sr.

Inconsistently, the trial court stated in a supplemental finding:

> The evidence established the existence of substantial assets held in joint banking accounts subject to the order of Donna Fells or Dan Fells, Sr., and the assets of those accounts were transferred by Donna Fells to joint accounts subject to the demand of Donna Fells or Margy O'Rourke with right of survivorship. The evidence did not establish whether these transactions were made with or without the knowledge or consent of Dan Fells, Sr.

Essentially, the trial court concluded from the evidence that the community assets had been transferred by Donna Fells without the knowledge or consent of Fells Sr., but then later decided that the evidence did not establish whether the transactions were made "with or without" the knowledge or consent of Dan Fells Sr.

18

But there is insufficient evidence Fells Sr. knew of or consented to the transactions transferring the accounts out of his name. After learning about the transactions on the accounts from Donna's son after Donna's death, Fells Sr. went to the credit union and the bank to check on the status of the accounts, and then sued his deceased wife's estate for his share of the money. If the appellant has the burden of proof on this issue despite the fiduciary duty, still the trial court's supplemental finding was "against the great weight and preponderance of the evidence." *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

As the majority footnotes, the parties are subject to a new trial on the conversion and partition claims on the rent property. We should reverse the judgment and remand this cause for a new trial at the same time on appellant's claim to Fells Sr.'s one-half community interest in the accounts.

_____
DAVID GAULTNEY
Justice

Dissent Delivered
October 24, 2013

Before McKeithen, C.J., Gaultney and Kreger, JJ.